**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael R. GOLAND, Defendant–**
**Appellant.**

**No. 90–50423.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 1991.

Decided March 25, 1992.

---

Seth P. Waxman, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant-appellant.

George B. Newhouse, Jr., Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FARRIS, PREGERSON and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## OVERVIEW

Michael Goland was charged with committing political campaign violations in connection with the race between Alan Cranston, Ed Zschau, and Ed Vallen for the United States Senate in the 1986 California election. His first trial ended in a mistrial. Goland then moved to dismiss the indictment on double jeopardy grounds. The district court denied the motion and Goland took an interlocutory appeal under *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). In that appeal, we held that double jeopardy did not bar Goland's reprosecution. *United States v. Goland*, 897 F.2d 405, 413 (9th Cir.1990). Goland was tried again and this time a jury convicted him of making excessive contributions to a political campaign in violation of 2 U.S.C. §§ 441a(a)(1)(A) and 437g(d). He appeals this conviction. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

## FACTS

Alan Cranston (Democrat), Ed Zschau (Republican), and Ed Vallen (American Independent Party) ran in the 1986 California election for the United States Senate. The contest between Cranston and Zschau was close, and pollsters predicted a narrow margin would decide the race. Goland favored Cranston because of Cranston's strong pro-Israel record. To help Cranston's odds, Goland decided he could divert Republican votes from Zschau by running an independent expenditure campaign favoring Vallen and opposing Zschau. Goland had run a similar campaign opposing Senator Charles Percy of Illinois in 1984. Goland admitted that either he or Colleen Morrow, whom he had hired to help with the anti-Zschau effort, conceived the idea of a television commercial featuring a right wing candidate to praise Cranston and criticize Zschau.

Goland used Los Angeles media consultant Mike Barnes to contact Vallen and arrange the commercial. Goland kept his identity secret, because he believed Vallen would reject money from a pro-Israel source. He sent Barnes cashiers checks payable to "Greenstripe Media," the company Barnes had retained to coordinate broadcasts of the commercial.

Goland wrote the script that Vallen read for the commercial. The "tag line" on the commercial read "Paid for by the Committee to Elect Ed Vallen to the U.S. Senate," not "Paid for by Michael Goland," as required by law for an independent expenditure. *See* 11 C.F.R. § 110.11(a)(1)(iii) (1990). Goland claimed he did not see the tag line until after the commercial first appeared on the air, but he did not do anything to have the commercial taken off the air once he saw it.

Following his discovery of the improper tag line, Goland collected checks from ostensible "contributors" (to whom Goland gave cash reimbursements) to make it appear that Ed Vallen's campaign committee paid for the commercial through proper contributions. Goland admitted he participated in this effort to keep the commercial on the air.

The second superseding indictment charged Goland with six crimes. Count one charged Goland with conspiracy to defraud the United States by impairing and impeding the lawful function of the Federal Election Commission ("FEC") in violation of 18 U.S.C. § 371 and conspiracy to knowingly cause the filing of false campaign finance statements with the FEC in violation of 18 U.S.C. § 1001. Counts two through four charged Goland with causing the treasuries of two campaign committees to file false reports with the FEC concerning the sources of campaign financing supplied to them by Goland. Count five charged Goland with wilfully making an excessive campaign contribution of $120,000 to the Vallen committee, in violation of 2 U.S.C. §§ 441a(a)(1)(A) and 437g(d). Count six charged Goland with making an excessive campaign contribution of approximately $30,000 to National Pro–Life PAC.

The jury found Goland guilty of count five, not guilty of counts one, two, three and six, and hung on count four.

## DISCUSSION

### A. Requirements for Conviction Under 2 U.S.C. § 441a(a)(1)(A)

2 U.S.C. § 441a(a)(1) provides in pertinent part:

No person shall make contributions—
(A) to any candidate and his authorized political committees with respect to any election for Federal office which, in the aggregate, exceed $1,000

. . .

■ Goland contends he did not violate section 441a(a)(1)(A) because he "[c]learly .'.. did not contribute any money to the 'candidate' himself," but instead gave the money to Greenstripe Media. We reject this argument. A violation does not require a direct transfer of money to a candidate. See 2 U.S.C. § 441a(a)(8). Rather, section 441a(a)(1)(A) prohibits "contributions," a term courts have interpreted very broadly. The Supreme Court noted in *Buckley v. Valeo*, 424 U.S. 1, 23–24 n. 24, 96 S.Ct. 612, 636–37 n. 24, 46 L.Ed.2d 659 (1976):

Funds provided to a candidate or political party or campaign committee either directly or indirectly through an intermediary constitute a contribution. In addition, dollars given to another person or organization that are earmarked for political purposes are contributions under the act.

See also *California Medical Ass'n v. FEC*, 453 U.S. 182, 198–99 n. 19, 101 S.Ct. 2712, 2722–23 n. 19, 69 L.Ed.2d 567 (1981) (plurality opinion) (administrative support constitutes a contribution under section 441a(a)); *Federal Election Comm'n v. Ted Haley Congressional Comm.*, 852 F.2d 1111, 1116 (9th Cir.1988) (post-election loan guarantees to bank qualify as contributions); 2 U.S.C. § 431(8)(A)(i) (contribution includes "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office"); 11 C.F.R. § 100.7(a)(1) (1990) (same); 11 C.F.R. § 100.7(a)(1)(iii)(A) (1990) (defining contributions of "anything of value"). It is immaterial that Goland made his contribution to Vallen indirectly.

Under the Federal Election Campaign Act, independent expenditures must be made "without cooperation or consultation with any candidate, or any authorized committee or agent of such candidate, and [may not be] made in concert with, or at the request or suggestion of any candidate, or any authorized committee or agent of such candidate." 2 U.S.C. § 431(17); 11 C.F.R. 100.16 (1990). In *Buckley*, the Supreme Court drew a distinction between monetary limits on independent expenditures and campaign contributions. The Court prohibited dollar limitations on independent expenditures, *Buckley v. Valeo*, 424 U.S. at 39–49, 96 S.Ct. at 644–49, but upheld the limitations on campaign contributions. *Id.* at 23–38, 96 S.Ct. at 636–44. Limits on independent expenditures tend to exclude all citizens and groups except candidates, political parties, and the institutional press "from any significant use of the most effective modes of communication," while campaign contribution limits place only a "marginal restriction" upon the contributor's ability to engage in free communication. *Id.* at 19–21, 96 S.Ct. at 634–35.

■ Goland asserts that his contributions were "independent expenditures" because he did not directly contribute to Vallen's campaign and because he was secretly supporting Cranston's reelection. Goland's arguments lack merit.

Goland was charged with contributing to the Vallen campaign. He worked through his agent, Barnes, to fund and arrange the Vallen commercials. The independent expenditures exception to contribution limits does not apply to Goland because: (1) agents of Vallen and Goland were acting in concert; and (2) Vallen cooperated with Goland by accepting the money and performing the commercial. Goland intended to contribute to Vallen's campaign, and it is immaterial to conviction under section 441a(a)(1)(A) that he did so in support of Cranston.

For the first time on appeal, Goland argues that he cannot be convicted of violating section 441a(a)(1)(A) because the "Committee to Elect Ed Vallen" was not in legal

existence at the time of Goland's purported contribution. We generally do not consider an issue raised for the first time on appeal. *United States v. Carlson,* 900 F.2d 1346, 1349 (9th Cir.1990). We consider this issue, however, because it presents a pure question of law and the opposing party will suffer no prejudice as a result of Goland's failure to raise it in the trial court. *Id.*

The superseding indictment charged Goland with making a campaign contribution to "The Committee to Elect Ed Vallen to U.S. Senate." Similarly, the jury instructions required the jury to find that Goland gave something of value in excess of $2,000 to the "Vallen campaign committee." Goland's proposed jury instruction, which was not adopted by the district court, also referred to contributions to the "Vallen committee."

Goland does not argue that his conviction should be set aside because the indictment charged him with a statutorily prohibited contribution to Vallen's *committee* and not to the *candidate* Vallen. Rather, he argues that the Committee to Elect Ed Vallen did not exist on October 27, 1986, and without a committee in legal existence, the contribution was "not a statutorily prohibited contribution to 'any candidate' or to any 'authorized political committee.'" Brief for Appellant 20.

■ We reject this argument. Nothing on the face of section 441a(a)(1)(A) requires the existence of an authorized political committee to sustain a valid prosecution; an excessive contribution to a candidate suffices.

Moreover, nothing in the legislative history of section 441a indicates that Congress intended the legal existence of an authorized campaign committee to be a prerequisite to prosecution. Indeed, Congress apparently used the words "candidate and his authorized political committees" in section 441a(a)(1)(A) to insure that contributions to such committees count toward the $1,000 contribution limitations for each candidate, and not toward the $20,000 and $5,000 contribution limits for political committees set out in sections 441a(a)(1)(B) and 441a(a)(1)(C). H.R.Conf.Rep. No. 1057,

94th Cong. 2d Sess. 53–54 (1976), *reprinted in* 1976 U.S.C.C.A.N. 929, 968–69. Goland's proffered interpretation of the statute would create a loophole whereby contributions in excess of the $1,000 limit could be made to a candidate in the fifteen-day period before he or she is required to establish an authorized committee pursuant to section 432(e)(1). We do not read the statutes as providing such a loophole.

■ Finally, as we have explained, a contributor may violate section 441a by making an excessive contribution to a candidate. The government presented sufficient evidence for the jury to conclude that Goland made such a contribution to Vallen. The indictment, however, charged Goland with making an excessive contribution to Vallen's committee. This variance is immaterial. Federal election law treats the candidate and his committees as a single unit for the purpose of accepting contributions. Under 2 U.S.C. § 432(e)(2), any candidate who receives a contribution for use in connection with his campaign is considered as having received the contribution as the agent of the authorized committee or committees of the candidate. *See also* U.S.C. § 441a(a)(7)(A).

It is undisputed that Vallen received and accepted the contribution, albeit he did not know its source, and starred in the commercial written and paid for by Goland. The government's proof established the statutorily prohibited contribution as charged by the indictment.

**B.   Erroneous Jury Instructions**

■ Goland argues that the district court erred in failing to give a "theory of defense" instruction to the jury. "A trial judge may refuse an instruction if its language gives undue emphasis to defendant's version of the facts rather than being 'a statement of appropriate principles of [the] law for the jury to apply to the facts,' or if it would tend to influence the jury toward accepting the defendant's version of the facts." *United States v. Davis,* 597 F.2d 1237, 1240 (9th Cir.1979) (citation omitted).

As in *Davis,* Goland was given ample opportunity to testify, and his theory of defense was forcefully argued by his counsel. *See Davis,* 597 F.2d at 1240 n. 7. Further, the instructions that the court gave to the jury adequately expressed Goland's theory of defense.

■ Goland also contends the district court erred in failing to instruct the jury that specific intent to violate the criminal laws charged in the indictment "may not be inferred solely from Mr. Goland's failure to adhere to administrative or civil provisions of the federal election law." The district court instead instructed the jury that "[v]iolations of regulations or civil statutes without more are not crimes, and such violations if any occurred, are not necessarily violations of criminal law ... you may consider [violations of civil statutes] as you would any other evidence in determining whether or not Mr. Goland had the required specific intent to violate the law charged in this indictment." The instruction the court gave is essentially the same as the instruction Goland requested. The court is not required to instruct the jury in the chosen words of the accused. *Davis,* 597 F.2d at 1239.

## C. Evidentiary Rulings

Goland argues that the district court erred by excluding relevant and probative defense evidence in six areas. He contends the excluded evidence is relevant both to his state of mind that payment for the Vallen commercial was an independent expenditure, and to prove that the Vallen committee did not exist on the date of the contribution.

We have carefully reviewed the proffered evidence, and conclude the district court did not abuse its discretion in excluding it. *See United States v. Emmert,* 829 F.2d 805, 808 (9th Cir.1987) (evidentiary rulings are reviewed for abuse of discretion and will result in reversal only if nonconstitutional error more likely than not affected the verdict).

## D. Improper Rebuttal Argument

■ Goland argues that the prosecutor improperly exceeded the scope of rebuttal argument. A district court's determination regarding the proper scope of rebuttal is reviewed for an abuse of discretion. *United States v. Gray,* 876 F.2d 1411, 1417 (9th Cir.1989), *cert. denied,* 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990). Goland has failed to demonstrate that any of the errors he asserts more likely than not materially affected the fairness of the trial. *United States v. Polizzi,* 801 F.2d 1543, 1557–58 (9th Cir.1986).

## E. Political Party Affiliation of Jurors

Finally, Goland argues that the district court erred in failing to ask prospective jurors during voir dire which candidate, if any, they voted for in the 1986 election and with which political party, if any, they were registered.

■ In conducting voir dire, the district court has wide latitude. Failure to ask specific questions will be reversed only for an abuse of discretion. *United States v. Steel,* 759 F.2d 706, 711 (9th Cir.1985). Such an abuse of discretion will be found if the voir dire is not reasonably sufficient to test the jury for bias or partiality. *Id.*

■ Here, the district court asked potential jurors whether they had voted in the 1986 election, were active in politics, had participated in any federal campaign, or were familiar with the FEC or federal election law. Further the court asked whether any of the potential jurors supported Cranston, Zschau or Vallen in the 1986 election in a way other than voting, such as by actively campaigning or contributing campaign funds. The extensive voir dire conducted by the court adequately tested the jurors for bias or partiality.

AFFIRMED.

PREGERSON, Circuit Judge, dissenting:

I respectfully dissent. The majority holds that Goland made a "contribution" to Ed Vallen's campaign, and not an "independent expenditure" to Senator Alan Cran-

ston's campaign. My disagreement with the majority's holding rests on three grounds. First, I disagree with the majority's application of the campaign contribution law, particularly in light of the fact that it is a specific intent crime. Second, the majority ignores the doctrine of lenity, which is especially important when First Amendment rights are involved. Third, the district court excluded critical evidence that was directly relevant to Goland's state of mind.

I agree with the majority that a "contribution" under 2 U.S.C. § 441a(a)(1)(A) does not require a direct payment to the candidate, ante at 1452, but I disagree that it is immaterial to conviction under this section that Goland's efforts were actually in support of Cranston, ante at 1452. To the contrary, this fact is highly relevant to Goland's culpability because he is charged with a specific intent crime. Thus, his subjective motive must be taken into account before a conviction can be rightfully returned.

At all times, Goland has maintained that he intended to make an independent expenditure to Cranston's campaign. He took steps to conform to the requirements of independent expenditures by insuring that he would have no contact with Cranston. Because the evidence is insufficient to establish that Goland possessed the requisite specific intent to support a conviction for making excessive contributions to Vallen's campaign in violation of 2 U.S.C. §§ 441a(a)(1)(A) and 437g(d), I would reverse Goland's conviction.

The government concedes the truth of Goland's assertion that he financed the television commercial to promote Cranston's reelection by siphoning votes away from Ed Zschau. The government also admitted during oral argument that the commercial was an independent expenditure with respect to Senator Alan Cranston. Nonetheless, the majority concludes that the "independent expenditures exception to contribution limits does not apply to Goland because: (1) agents of Vallen and Goland were acting in concert; and (2) Vallen cooperated with Goland by accepting the money and performing the commercial." Ante at 1452.

I disagree. It can hardly be said that Goland and Vallen cooperated in this effort. Vallen made it clear that he would not accept support from a Zionist source. In fact, Vallen had been told that the support came from a patriotic conservative Republican. For his part, Goland despised Ed Vallen and supported Alan Cranston for his pro-Israel views.

The television commercial, which constitutes the allegedly illegal contribution, was conceived and written by Goland. The ad featured Ed Vallen, criticizing Ed Zschau, and stating that only he and Alan Cranston had integrity. Goland refused to approve script changes to satisfy Vallen, and Vallen acquiesced in the venture only because he felt that some air time was better than none. The commercial featured Vallen, but it did not clearly urge voters to elect him. Rather, the commercial focused on criticizing Zschau. Under these circumstances, it is difficult to conclude that Vallen and Goland were working in concert. Each used the other to pursue an individual and independent agenda.

The majority applies the definition of "contribution" in too broad a manner. The law is not clear whether the statute encompasses tactics of using one candidate to further the election of another candidate. Testimony of the government's expert witness at Goland's first trial bears out this ambiguity. An associate general counsel of the FEC testified that when the regulations speak of cooperation with a candidate, they mean generally the candidate that the individual supports, and not the candidate that the individual opposes.[1] Goland was not permitted to introduce this testimony at his second trial. Nor did the court allow Goland to cross-examine the FEC official to establish, at least hypothetically, that sponsorship of the Vallen commercial could rea-

---

1. Counsel for Goland informed us of this testimony at oral argument. It was not refuted by the government.

sonably be considered an independent expenditure.

The lack of clarity concerning the scope of activity prohibited by § 441a(a)(1)(A) mandates a finding that Goland did not possess the specific intent required for a conviction under the campaign contribution laws. "It is settled that when the law ... is highly debatable, a defendant-actually or imputedly-lacks the requisite intent to violate it." *United States v. Dahlstrom*, 713 F.2d 1423, 1428 (9th Cir.1983) (quoting *United States v. Critzer*, 498 F.2d 1160, 1162 (4th Cir.1974)), *cert. denied*, 466 U.S. 980, 104 S.Ct. 2363, 80 L.Ed.2d 835 (1984).

The doctrine of lenity offers additional support for reversing Goland's conviction. It is well settled that questions concerning the ambit of a criminal statute are resolved in favor of lenity. *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979). "This practice reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Id.* "[T]o ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions that are not 'plainly and unmistakably' proscribed." *Id.* at 112–13, 99 S.Ct. at 2197 (quoting *United States v. Gradwell*, 243 U.S. 476, 485, 37 S.Ct. 407, 410, 61 L.Ed. 857 (1917)). Under these principles, I cannot conclude that Goland acted in concert or cooperated with agents of Vallen under the terms of the provisions in question.

We must be particularly sensitive in this case because we risk sanctioning punishment for First Amendment activity when we regulate critical expression. *See Buckley v. Valeo*, 424 U.S. 1, 40, 41, 96 S.Ct. 612, 645, 645, 46 L.Ed.2d 659 (1976) ("specificity of the statutory limitation is required where, as here, the legislation imposes criminal penalties in an area permeated by First Amendment interests"). In *Buckley*, the Supreme Court held that Congress could not regulate independent expendi-tures because such restrictions would "impose direct and substantial restraints on the quantity of political speech." *Id.* at 39, 96 S.Ct. at 644.

Goland believed that he made an independent expenditure in support of Cranston by financing the commercial. Goland wrote the words that Vallen spoke. Those words promoted Cranston. Moreover, Goland refused to make script changes to suit Vallen. These facts demonstrate that the commercial was a medium for *Goland's* political speech and was in no way intended to support Vallen. The commercial should be considered an independent expenditure protected by the First Amendment. *See Id.* 424 U.S. at 44–47, 96 S.Ct. at 646–48 (discussing difference between contributions and independent expenditures in terms of First Amendment values).

Evidence raising doubts about Goland's intent to violate the election laws was excluded from the jury's consideration. Although evidentiary rulings are within the sound discretion of the trial judge, evidence probative of a defendant's state of mind in a case in which intent is contested is presumed to be relevant. *See United States v. Wasman*, 641 F.2d 326, 329 (5th Cir. 1981), *aff'd*, 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984); *United States v. Platt*, 435 F.2d 789, 793 (2d Cir.1970). A few years earlier, the FEC conducted an inquiry into Goland's efforts against Senator Percy in the 1984 Illinois Republican primary. Goland used similar tactics in that election as he used here against Zschau. The FEC terminated its inquiry because it found no evidence of unlawful coordination. The FEC's own conclusion supports Goland's theory of defense here that he believed his tactics to promote Cranston were an independent expenditure. For the reasons stated above, Goland's intent is a key issue in this case. Evidence probative of that intent should not have been excluded.

The trial court excluded other evidence that was directly relevant to Goland's state of mind. The court sustained relevancy objections and thereby excluded evidence that Barnes, the media consultant, made a

1457

similar "independent expenditure" offer to another third-party candidate. The trial court also refused to allow Goland's counsel to cross-examine Barnes and Morrow, who testified contrary to Goland, on previous inconsistent statements. In a trial where much depended on the credibility of the witnesses, the failure to allow this cross-examination disadvantaged Goland unfairly. The jury should have been allowed to consider this evidence in determining Goland's intent regarding the commercial.

Under § 437g(d)(1)(A), the violation of the federal election campaign laws must be made "knowingly and willfully." Thus, the government must prove as an element of the offense that Goland engaged in the prohibited conduct "voluntarily and intentionally, and not because of mistake or accident or other innocent reason." 1 Devitt and Blackmar, Federal Jury Practice and Instructions, § 14.04 (3d ed. 1977). "Willful" in the criminal context includes a specific intent to do an act forbidden by law. *Id.* § 14.06; *United States v. Drew,* 722 F.2d 551, 552 (9th Cir.1983), *cert. denied,* 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984); *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976).

Goland's intent was the central issue at trial. Because of the ambiguity regarding the scope of the federal election campaign laws and the excluded evidence relating to Goland's intent, I believe that Goland lacked the requisite mental state to support a conviction for making excessive campaign contributions.

The majority's holding is a novel interpretation of ambiguous statutory terms. As such, it is unfair to apply this new legal standard to Goland. Due process requires that a person be given fair notice of what constitutes illegal conduct so that he may conform his conduct to the requirements of the law. *United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2203, 60

L.Ed.2d 755 (1979). Goland had no such notice. Accordingly, I would reverse.