972 F.2d 1347
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Clifton A. SHERWOOD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael R. GOLAND, Defendant-Appellant.
 Nos. 91-50337, 91-50338.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1992.
Decided Aug. 12, 1992.
 
 Before TANG, SCHROEDER and BEEZER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 These appeals result from the government's successful prosecution of Michael Goland and Clifton Sherwood for conspiracy to make false statements to a government agency and making false statements to a government agency. 18 U.S.C. §§ 2, 371, 1001. Goland and Sherwood challenge whether the government proved the elements of the charged crimes, the sufficiency of the evidence, the propriety of certain evidentiary rulings and the adequacy of the jury instructions. Goland also challenges whether he made a showing of the "exculpatory no" defense. We have jurisdiction and we affirm.
 
 
 3
 * Goland is a man with many friends. Either he facilitated their investment in small Viking Savings and Loan (Viking) in Santa Monica, California, or they facilitated his attempt to gain behind the scenes control of Viking. Sherwood is one of Goland's friends who invested in Viking. He is the only investor indicted along with Goland.
 
 
 4
 Lyle Weisman is the attorney who put the transaction together. Purchasing a federally regulated thrift requires various regulatory approvals. Investors must provide information to obtain those approvals. The gravamen of this case centers around whether Goland orchestrated a series of false written statements to federal regulatory authorities to obtain surreptitious control of Viking, and then lied under oath when questioned about his scheme.
 
 
 5
 The government's 20 count indictment divides roughly into five categories of crimes. First, count 1 alleges that, in seeking approval to purchase Viking, Goland and Sherwood conspired to defraud the United States by making false statements and concealing material facts.[1] Second, counts 2, 3 and 15 allege that Goland, in violation of 18 U.S.C. §§ 2(b),[2] 1001, "knowingly and willfully used and caused" Michael Altman and David Hultquist to file false Federal Home Loan Bank Board (FHLBB) Form 139s ("Biographical and Financial Reports") and "knowingly and willfully caused Michael J. Berger, attorney for Weisman and the Sham Investors," to file with the FHLBB a letter containing false responses to questions the FHLBB had asked about the Viking purchase. Third, counts 4 through 12 allege that Goland, also in violation of §§ 2(b), 1001, "knowingly and willfully used and caused" the sham investors[3] to file false FHLBB Form 1173As, which request information on the interest the investor seeks to purchase. Fourth, counts 13, 14 and 16 allege that Sherwood, in violation of 18 U.S.C. §§ 2(a),[4] 1001, "knowingly and willfully made and used" false writings[5] in his communications with the FHLBB, and that Goland "aided, abetted, counselled, commanded, induced and procured" the same. Fifth, counts 17 through 20 allege that Goland, in violation of § 1001, knowingly and willfully made false statements under oath about the source of various investors' contributions.[6]
 
 
 6
 To summarize, each of the 20 counts allege a crime by Goland. Count 1 alleges conspiracy by Sherwood, and counts 13, 14 and 16 allege that Sherwood filed false writings with the FHLBB. A jury convicted on each and every count alleged as to each man.
 
 
 7
 The district court sentenced Sherwood to three years probation, imposed a $10,000 fine and ordered that he perform 1000 hours of community service. He has elected to begin serving the probationary term of his sentence.
 
 
 8
 The district court sentenced Goland to 24 months in prison on counts 1 through 16. On each of counts 17 through 20, the district court sentenced Goland to 12 months in prison. The 12 month sentences are to be served concurrently with each other and with the 24 month sentence. Goland is free on bail pending disposition of this appeal. The district court fined Goland a total of $5,000 as to counts 17 through 20.
 
 II
 
 9
 On several substantive issues, Goland and Sherwood challenge whether the government proved the elements of the charged crime, whether the evidence was sufficient and whether the jury instructions, or lack thereof, were correct.
 
 
 10
 Determining the elements of a crime presents a pure question of law, which we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984). We review a challenge to the sufficiency of the evidence by determining whether, viewing the evidence in a light most favorable to the government, any rational trier of fact could find the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). The government is entitled to all reasonable inferences that might be drawn from the evidence. United States v. Vaughn, 797 F.2d 1485, 1489 (9th Cir.1986).
 
 
 11
 We do not have a clear standard for review of a district court's denial of a proposed jury instruction. United States v. Streit, No. 90-10509, slip op. 4413, 4418 (9th Cir. Apr. 23, 1992) (not deciding correct standard because same result whether review de novo or for abuse of discretion), amended, slip op. 5701, 5704 (9th Cir. May 19, 1992) (immaterial amendment). We accord the district court substantial latitude in tailoring the jury instructions to the issues presented, and view any challenge to the adequacy of the instructions in the context of the entire trial. United States v. Patel, 762 F.2d 784, 790 (9th Cir.1985). The question is not whether a proposed instruction is preferable, but whether the ones given fairly and adequately cover the issues presented. United States v. Miller, 688 F.2d 652, 662 (9th Cir.1982).
 
 
 12
 * The government must prove five elements to obtain a conviction under 18 U.S.C. § 1001: (1) a statement, (2) falsity, (3) materiality, (4) specific intent and (5) agency jurisdiction. United States v. Boone, 951 F.2d 1526, 1544 (9th Cir.1991). Goland and Sherwood challenge whether the government proved specific intent and falsity.
 
 
 13
 * We did not elaborate on the meaning of specific intent in Boone. In upholding a § 1001 conviction, however, we did state "that [the defendants] knew that the use of these investors' names was not authorized and that they had intentionally filed false claims." Id. at 1545. In Vaughn, we explained that "[t]he statement must be made intentionally and with the knowledge that it is false, but the defendant need not know of the agency's jurisdiction and he need not intend to deceive." 797 F.2d at 1490 (citation omitted). Vaughn summarized an earlier pronouncement on the meaning of specific intent. In United States v. Carrier, 654 F.2d 559 (9th Cir.1981), we explained:
 
 
 14
 To willfully make a false statement under § 1001, a defendant must have "the specific intent of 'bringing about' the forbidden act." However it is not necessary that the government prove that the appellant in fact had an evil intent. The word "willfull" means no more than that the forbidden act is done "deliberately and with knowledge."
 
 
 15
 Id. at 561 (quotations omitted). The parties' dispute over the meaning of specific intent in fact derives from our recognition that the word "willful" can have different meanings depending on the offense concerned. See Neely v. United States, 300 F.2d 67, 72-73 (9th Cir.) (more exacting standard where "traditional aversion to imprisonment for debt" implicated), cert. denied, 369 U.S. 864 (1962). Carrier states our standard for establishing specific intent under § 1001.
 
 
 16
 In its instruction on the § 1001 counts, the district court stated:
 
 
 17
 For purposes of these instructions, an act is done knowingly and willfully if the defendant is aware of the act and does not act through ignorance, mistake or accident.
 
 
 18
 This sentence conveys the gist of the Carrier standard, deliberately ("does not act through ignorance, mistake or accident") and with knowledge ("aware of the act"). Subsequent instructions make clear that, in addition to having knowledge of the false statement, the defendant must also have participated in causing it. We conclude that the instruction given fairly and adequately covers the issue of specific intent.
 
 
 19
 Although they phrase their challenges differently because their arguments posit a more exacting standard for showing specific intent, both Goland and Sherwood challenge whether the evidence shows that they acted deliberately and with knowledge. The government answers that Weisman's testimony implicating both Goland and Sherwood provides sufficient evidence for conviction. United States v. Lai, 944 F.2d 1434, 1440 (9th Cir.1991) (uncorroborated accomplice testimony enough to sustain conviction unless incredible or unsubstantial on its face), cert. denied sub nom. Brandon v. United States, 112 S.Ct. 947 (1992). The other evidence corroborates Weisman's testimony so that the jury would find him credible. We find that Weisman's testimony is not incredible or unsubstantial on its face. Thus, the jury was free to find Weisman's testimony more credible than that of Goland and Sherwood, United States v. Restrepo, 930 F.2d 705, 711 (9th Cir.1991), and find the requisite specific intent for counts 2 through 16.
 
 2
 
 20
 Goland argues that the government must negative any reasonable misinterpretation of its questions that would render the answers provided literally correct. See United States v. Diogo, 320 F.2d 898, 907 (2d Cir.1963). This concept protects against criminal conviction in cases of unfocused questioning or legal impossibility. See United States v. Mayberry, 913 F.2d 719, 722 (9th Cir.1990) (confirming bank balance not the same as asserting ownership over funds); United States v. Vesaas, 586 F.2d 101, 104 (8th Cir.1978). If the question put could be construed in two ways, however, the jury decides whether the government has proved beyond a reasonable doubt that the answerer understood the question in the manner advanced by the government, and then responded falsely. See Carrier, 654 F.2d at 562; United States v. Matthews, 589 F.2d 442, 445 (9th Cir.1978), cert. denied, 440 U.S. 972 (1979).
 
 
 21
 Weisman's testimony supports that Goland and Sherwood knew what information the government was seeking. The whole point of the forms was to determine who would control Viking after the transaction. Both Goland and Sherwood based their defenses on explaining how the investors actually purchased for their own interest. The jury rejected this characterization of the evidence. If the investors were not purchasing for their own interest, their responses were false. After the fact machinations attempting to show literal truth do not change falsity at the time of submission. The district court instructed the jury accordingly. We find that the government produced ample evidence for the jury to find the element of falsity beyond a reasonable doubt.
 
 B
 
 22
 Sherwood argues that the district court should have given a multiple conspiracies instruction. Such a challenge entails inquiries into the elements of proving an overall conspiracy and the possibilities presented by the evidence. The jury should receive a multiple conspiracies instruction if Sherwood's theory is supported by law and has some foundation in the evidence. "A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment." United States v. Anguino, 873 F.2d 1314, 1317 (9th Cir.), cert. denied, 493 U.S. 969 (1989). We review de novo whether the district court should have given the instruction. Id.
 
 
 23
 We must determine whether the proof presented would allow a jury reasonably to conclude that Sherwood engaged in a separate conspiracy unrelated to the overall conspiracy. For obvious reasons Sherwood maintains that he made a bona fide investment in Viking. As obviously, the jury disbelieved him. In support of a separate conspiracy theory, however, Sherwood contends that the government produced no testimony in which he affirmatively indicated that he was purchasing to assist Goland to secure control of Viking. The separate conspiracy, then, would be the surreptitious purchase of an interest in Viking for Goland, not knowing that Goland's control of Viking was the ultimate objective.
 
 
 24
 We cannot agree that, in Sherwood's case, a reasonable jury could find such a middle ground between a bona fide investment and the overall conspiracy. Sherwood was far too deeply involved in the purchase of Viking and exercising control over Viking's affairs. Sherwood went to the closing and provided the checks that closed the purchase. Immediately following closing, Sherwood became a director and secretary of Viking. He pressured Henry Fok, the new president of Viking, to make a loan to Senator Alan Robbins before December 31, 1986.[7] This pressure coincided with a similar request by Goland. Sherwood generally directed the agenda at board meetings, and specifically invoked Goland's opinions when negotiating Fok's compensation with him.
 
 
 25
 Sherwood behaved as a man who clearly understood that the objective was control over Viking. A bona fide investor might seek such authority. A member of a conspiracy aimed at seeking control over Viking could as well. A member of a separate conspiracy unrelated to the overall conspiracy charged in the indictment would not. The jury had a clear choice between finding Sherwood either a bona fide investor or a full-fledged coconspirator. No reasonable jury could have concluded that Goland duped Sherwood into a separate conspiracy in which Sherwood did not understand the purpose of the overall conspiracy. We conclude that the district court did not err in refusing to give a multiple conspiracies instruction.
 
 
 26
 Sherwood also challenges the sufficiency of the evidence supporting his conspiracy conviction. To obtain a conspiracy conviction, the government needs to produce evidence of only a slight connection to the conspiracy. Proof of connection can be by circumstantial evidence, and may be based on inference. United States v. Berberian, 851 F.2d 236, 238 (9th Cir.1988), cert. denied, 489 U.S. 1096 (1989). In addition to the foregoing, Weisman's testimony indicates that Sherwood participated in the overall conspiracy. Lai, 944 F.2d at 1440. The government's financial proof corroborates Weisman's testimony. The jury had sufficient evidence to convict Sherwood of the overall conspiracy.[8]
 
 III
 
 27
 Sherwood maintains that the district court should have given the limiting instruction he requested when Goland introduced Exhibits 725 and 726. The government correctly observes that the exhibits were not offered for the truth of the matter asserted. The district court properly denied Sherwood's hearsay objection. See Fed.R.Evid. 801(c); United States v. Soliman, 813 F.2d 277, 278 (9th Cir.1987).
 
 IV
 
 28
 We engage in a five-part inquiry to determine the applicability of the exculpatory no defense. See United States v. Alzate-Restreppo, 890 F.2d 1061, 1066 (9th Cir.1989). Goland's difficulty lies in satisfying the fourth part, which asks whether his false statements (counts 17 through 20) were in response to a routine exercise of administrative responsibility. "The application of the 'exculpatory no' defense to a prosecution under section 1001 is a legal question we review independently without deference to the district court's rulings." Id.
 
 
 29
 Alzate-Restreppo comprehensively discusses our cases on the exculpatory no defense. The defense does not apply to a pre-arrest noncustodial inquiry in an administrative context. Id. at 1067. Goland's protest that he was under suspicion when questioned does not aid him. The officers who questioned Alzate-Restreppo suspected him of a crime as well. Id. at 1062-63. Thrift regulatory authorities clearly have an administrative duty to clarify any discrepancies they might notice or suspicions they might have regarding a control transaction.
 
 
 30
 Goland further alleges that the district court's refusal to rule on the applicability of the defense before trial prejudiced him because he had to introduce damaging evidence to make out the defense. Goland misconstrues the district court's ruling, in which it stated:
 
 
 31
 Whether the government is able to establish a direct relationship between the allegedly false statement and an authorized function of the Federal Home Loan Bank remains to be seen from the evidence produced at trial.
 
 
 32
 The district court did not say that applicability of the the exculpatory no defense presented a jury question. It reserved its ruling on the question until the government presented evidence showing that the FHLBB officials were acting in an administrative capacity. They were. Alzate-Restreppo, 890 F.2d 1061. Goland's only recourse was to ask the district court to rule whether the government had established that the FHLBB officials had acted in an administrative capacity.
 
 
 33
 After correctly deciding a question of law, id. at 1066, the district court properly did not instruct the jury on the exculpatory no defense.
 
 V
 
 34
 Goland argues that the district court improperly limited his cross-examination of Weisman by refusing to admit certain documents into evidence. "When the case against a defendant turns on the credibility of a witness, the defendant has broad cross-examination rights." United States v. Ray, 731 F.2d 1361, 1364 (9th Cir.1984). In fact, the defendant may introduce extrinsic evidence to establish bias. Id. (discussing Fed.R.Evid. 608).
 
 
 35
 A defendant may use extrinsic evidence to impeach a witness, but may not introduce such evidence to prove prior misconduct that did not result in a conviction. United States v. Jackson, 882 F.2d 1444, 1448-49 (9th Cir.1989) (also discussing Fed.R.Evid. 608); cf. United States v. Lew, 875 F.2d 219, 222-23 (9th Cir.1989) (not allowing impeachment testimony against a coconspirator, who testified in exchange for a plea, because it was extrinsic evidence). The parties do not dispute either that Goland's attorney cross-examined Weisman extensively based upon the contents of the excluded documents or that the documents did not pertain to a conviction. " 'When the trial court excludes evidence tending to impeach a witness, it has not abused its discretion as long as the jury has in its possession sufficient information to appraise the biases and motivations of the witness.' " United States v. Lopez, 885 F.2d 1428, 1438 (9th Cir.1989) (quoting United States v. Kennedy, 714 F.2d 968, 973 (9th Cir.1983), cert. denied, 465 U.S. 1034 (1984)), cert. denied, 493 U.S. 1032 (1990). We find no abuse of discretion.
 
 VI
 
 36
 Goland argues that the district court should have given his proffered theory of the defense instruction. A district court must instruct on the defendant's theory of the case if it is legally sound and supported by evidence in the record. United States v. Washington, 819 F.2d 221, 225 (9th Cir.1987). The requested instruction must explain a legal theory of defense. United States v. Escobar de Bright, 742 F.2d 1196, 1198-1201 (9th Cir.1984) (district court should have given Sears rule instruction); United States v. Nevitt, 563 F.2d 406 (9th Cir.1977) (not error to refuse a mere recitation of defendant's version of facts).
 
 
 37
 "A trial judge may refuse an instruction if its language gives undue emphasis to defendant's version of the facts rather than being 'a statement of appropriate principles of [the] law for the jury to apply to the facts,' or if it would tend to influence the jury toward accepting the defendant's version of the facts."
 
 
 38
 United States v. Goland, 959 F.2d 1449, 1453 (9th Cir.1992) (quoting United States v. Davis, 597 F.2d 1237, 1240 (9th Cir.1979) (quotation omitted)).
 
 
 39
 The first three paragraphs of Goland's proffered instruction merely state his position that the government did not prove certain elements of its case. We explained supra Part II the propriety of the district court's instructions on the elements of the government's case for counts 2 through 16. The final paragraph of Goland's proffered instructions addresses the exculpatory no defense to counts 17 through 20. We explained supra Part IV how the district court correctly determined as a matter of law that the exculpatory no defense did not apply. We conclude that Goland advances no legal defense theory on which the district court should have instructed the jury.
 
 VII
 
 40
 The district court gave adequate general instructions as to witness credibility, and Goland was allowed to impeach Weisman. Supra Part V. We find that the district court did not abuse its discretion by refusing to give an admitted perjurer instruction. United States v. Sai Keung Wong, 886 F.2d 252, 257 (9th Cir.1989).
 
 VIII
 
 41
 We review for abuse of discretion a claim of error in the scope of rebuttal allowed by the district court. Goland must show that the errors he asserts "more likely than not materially affected the fairness of the trial." Goland, 959 F.2d at 1454.
 
 
 42
 The first claimed improper rebuttal, preceded by the instigating defense argument, is as follows:
 
 Defense Counsel:
 
 43
 The closing was rushed. It had to be done by December 31. And at that point [Goland] had to get the money for all these people.
 
 
 44
 The important point to remember is all these people had to go ahead and buy otherwise they would all be sued. Lyle Weisman threatened they would be sued.
 
 The Government's Rebuttal:
 
 45
 This brings us to the closing.
 
 
 46
 December 29, 1986. This is the hardest part of Mr. Goland's story to swallow. Here are the facts. He admitted this.
 
 
 47
 By December Mr. Goland is heavily in debt. By March '87 he's worth minus 27 million. He's deep in debt. Balboa is losing money by that point.
 
 
 48
 SB Development Company, we know from the tax return, lost money throughout 1986. It's losing money. You have SB Development's December bank statement in evidence. Look at the number of cancelled check charges appearing. The volume of money that went through that account, three and a half million dollars, with an average balance of $20,000 tells you that SB was very--
 
 
 49
 MR. LEWIN: Your Honor, I object to this.
 
 
 50
 MR. NEWHOUSE: --was very strapped for funds. SB was very strapped for money in December 1986.
 
 
 51
 MR. LEWIN: It's irrelevant and immaterial. It's not rebuttal, Your Honor. I--Basically I don't understand. I had not--there is very little for rebuttal.
 
 
 52
 THE COURT: The jury will remember that you have to determine what the facts are and what they mean and what they show and what weight and value to give them to them [sic] and ultimately each of you individually will have to reach a verdict in this case as to each defendant. So what counsel says is not evidence, as you know.
 
 
 53
 MR. NEWHOUSE: Thank you, Your Honor.
 
 
 54
 THE COURT: Proceed.
 
 
 55
 MR. NEWHOUSE: The bottom line is that by December of 1986, Mr. Goland is broke, his companies are illiquid and has [sic] no cash, and he wants you to believe that his friends all call and they say "We need money to close." If his friends did not put up the money, Mr. Goland wants you to think they would all be sued. And although he has no connection, although he supplied all the $75,000, Mr. Goland, out of a moral obligation offers up a million dollars when he doesn't have a million dollars. That is ludicrous.
 
 
 56
 The government's argument very clearly rebuts Goland's claim of altruistic motive. The true concern centers on whether the government impermissibly implied guilt of uncharged criminal conduct. The first response to this concern is that Goland's attorney objected only on grounds of relevance and materiality. Goland's motive in providing funds for the closing was clearly material and relevant. The second response is that the jury more than likely did not convict Goland of lying to the FHLBB simply because he might have kited checks. We conclude that the government's rebuttal did not more than likely materially affect the fairness of the trial. See Goland, 959 F.2d at 1454.
 
 
 57
 The second claimed improper rebuttal, preceded by the instigating defense argument, is as follows:
 
 Defense Counsel:
 
 58
 What does Mr. Sherwood do? He looks to his partner, Balboa Construction Company. He asks them to provide the funds to fund his Viking purchase. And the evidence shows that [Goland] and [Sherwood] discuss this at the time and agree to treat it as a debit to Mr. Sherwood's capital account at SB Development Company.
 
 The Government's Rebuttal:
 
 59
 The check from First Interstate was $100,000, or $101,000. That money didn't come from Balboa. This isn't Balboa, this is Senator Robbins. This is line of credit number 9522 which Mr. Goland admitted he realized related to a land acquisition that Senator Robbins was doing in Marina Del Rey.
 
 
 60
 MR. LEWIN: Objection, Your Honor.
 
 
 61
 MR. NEWHOUSE: Not Los Robles.
 
 
 62
 MR. LEWIN: Mr. Newhouse is relating to things that are not in this record.
 
 
 63
 THE COURT: Counsel, these disputes of what is or is not a part of the evidence is difficult for the court to resolve. That is why the jury is given to understand that that's their responsibility.
 
 
 64
 MR. LEWIN: Those are things that was [sic] specifically excluded from the record by Your Honor's ruling.
 
 
 65
 MR. NEWHOUSE: That is not, Your Honor, it is in the record.
 
 
 66
 MR. LEWIN: That was not.
 
 
 67
 MR. NEWHOUSE: May I continue, Your Honor?
 
 
 68
 THE COURT: Yes.
 
 
 69
 The clear purpose of the government's rebuttal was to challenge Goland's argument that Sherwood's funds came from Balboa. Although the district court might have ruled irrelevant the documents showing the purpose of the loan Senator Robbins made to Goland, the district court agreed that it was relevant that the money came from Senator Robbins, not Balboa. We conclude that the government's assertion that Goland did not use Senator Robbins' loan for its intended purpose did not more than likely materially affect the jury's determination whether Goland made false statements to the FHLBB. See Goland, 959 F.2d at 1454.
 
 IX
 
 70
 The district court's judgments of conviction are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The conspiracy count alleges 30 overt acts. The statutory bases for the conspiracy charge are:
 If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 371.
 Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 18 U.S.C. § 1001.
 
 
 [2]
 "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b)
 
 
 [3]
 The sham investors named in these counts are: Altman, Richard Brown, Edward Fedishon, Daniel Grifka, William Hebard, John Hoffman, Hultquist, Olga May and Maury White. Sherwood is named in a separate set of counts
 
 
 [4]
 "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a)
 
 
 [5]
 The false writings are: count 13, a FHLBB Form 1173A; count 14, a stock purchaser's certificate; count 16, a letter responding to a FHLBB inquiry
 
 
 [6]
 The investors named in these counts are: count 17, Sherwood; count 18, Hultquist; count 19, Hebard; count 20, Brown
 
 
 [7]
 Closing occurred on December 29, 1986
 
 
 [8]
 Viewed in a light most favorable to the government, the evidence supporting Goland's conspiracy conviction was overwhelming. See Jackson, 443 U.S. at 319