29 F.3d 636
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jaime ORTIZ-MARQUEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cain BARAJAS-ARREDONDO, Defendant-Appellant.
 Nos. 91-50112, 91-50115.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1993.
Decided June 16, 1994.
 
 1
 Before: REINHARDT and T.G. NELSON, Circuit Judges, and KAUFMAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Jaime Ortiz-Marquez and Cain Barajas-Arredondo appeal their convictions following a jury trial for conspiracy, 18 U.S.C. Sec. 371; transportation of illegal aliens, 8 U.S.C. Sec. 1324(a)(1)(B); harboring illegal aliens, 8 U.S.C. Sec. 1324(a)(1)(C); hostage taking, 18 U.S.C. Sec. 1203; and use of a firearm during a crime of violence, 18 U.S.C. Sec. 924(c).[1] They raise numerous challenges to their convictions. We reject all of Ortiz and Barajas's challenges to their convictions. However, we vacate the district court's sentences on the transportation and harboring counts to the extent that they exceed the statutory maximum.
 
 1. Motion to Suppress
 
 4
 In the district court, Ortiz joined in co-defendant Barraza's motion to suppress the gun which the officers discovered during a warrantless search of a dresser drawer in Apartment D.[2] Finding the warrantless search justified by consent and exigent circumstances, the court denied the motion to suppress. In an appeal which was calendared separately from the present case, a panel of this court rejected Barraza's challenge to the district court's ruling on this issue. See United States v. Peral-Cota, Nos. 91-50102, 91-50136 (9th Cir. March 11, 1993) (memorandum). That panel's conclusion is the law of the case, see United States v. Schaff, 948 F.2d 501, 506 (9th Cir.1991), and it is binding on us unless the prior panel clearly erred. See United States v. Jones, 982 F.2d 380, 383 (9th Cir.1992); United States v. Guy, 903 F.2d 1240, 1242 (9th Cir.1990). Because the prior panel did not clearly err in determining that the exigent circumstances exception justified the warrantless search in this case, we reject Ortiz's claim.
 
 
 5
 The exigent circumstances exception excuses the failure to obtain a warrant before conducting a search where "a substantial risk of harm to the persons involved or to the law enforcement process would arise if the police were to delay a search until a warrant could be obtained." United States v. Robertson, 606 F.2d 853, 859 (9th Cir.1979). It was not clearly erroneous for the Peral-Cota panel to conclude that such circumstances existed at the time Officer Garcia conducted the search at issue here. Although the officers had closed off the front and rear entrances to the apartment and gathered the occupants in the living room, the occupants outnumbered the officers. Moreover, the officers had been specifically informed that a gun was in the apartment. "The presence of a firearm alone is not an exigent circumstance." United States v. Gooch, 6 F.3d 673, 680 (9th Cir.1993) (emphasis added). However, it is not clearly erroneous to conclude that when officers are in an apartment with previously violent suspects who outnumber them, the possibility that one of the suspects could break away and obtain a firearm in the apartment presents a significant safety risk. Because this possibility may have existed when Officer Garcia conducted his search, we conclude that the prior panel did not clearly err in upholding his action on the basis of the exigent circumstances exception.
 
 2. Jury Instructions
 
 6
 (a) Failure to Instruct on All Elements of Hostage Taking--Although the Hostage Taking statute requires, in this type of case, that the victim not have been a "national[ ] of the United States," the instruction required the jury to find only that the victim was not a "citizen of the United States."[3] Because the term "national" includes both citizens and those owing permanent allegiance to the United States, the district court omitted an element of the offense. However, because no rational jury could have found that the victim in this case was not a citizen without also finding that he was not a national, we conclude that this error was harmless beyond a reasonable doubt.
 
 
 7
 "If jury instructions omit an element of the offense, constitutional error results because the jury has been precluded from finding each fact necessary to convict a defendant." Martinez v. Borg, 937 F.2d 422, 424 (9th Cir.1991). Because the court failed to instruct the jury fully on an element of the offense, we conclude that the instructions were constitutionally defective. See Hennessy v. Goldsmith, 929 F.2d 511, 514 (9th Cir.1991). However, we also conclude that the error was harmless beyond a reasonable doubt. We have adopted the standard Justice Scalia enunciated in Carella v. California, 109 S.Ct. 2419, 2421-24 (Scalia, J., concurring), for determining whether such an error is harmless. See Martinez, 937 F.2d at 425. Under this standard, the error is harmless if, despite the error, the jury must necessarily have found all facts essential to the conviction. "To apply this method of analysis, the appellate court must examine what the jury found. The error is harmless if no rational jury could have made those findings without also finding the omitted or presumed fact to be true." Martinez, 937 F.2d at 425 (emphasis added).
 
 
 8
 Here, the jury was not asked to find that Gomez was not a national of the United States. The instructions only referred to Gomez's citizenship, not his nationality. Even though Barajas is at least partially incorrect in arguing that "permanent allegiance" is broader and more subjective than citizenship, the two conditions are distinct. In the abstract, a rational jury could certainly find that someone is not a citizen without also finding that he is not a national.[4] In this case, however, no rational jury could have found that Gomez was not a citizen without also finding that he was not a national. The only evidence offered by the prosecution to establish that Gomez was not a United States citizen showed that he was a citizen of Mexico. If the jury credited this testimony--as it must have to have concluded that Gomez was not a citizen--then it necessarily found that Gomez was a Mexican citizen and therefore not a citizen or a national of the United States. Therefore, the error in the instruction was harmless beyond a reasonable doubt.
 
 
 9
 (b) Undue Emphasis on Particular Issues--Barajas and Ortiz claim that two sentences in the district court's instructions on the conspiracy and hostage taking charges placed undue emphasis on particular issues or theories and thus require reversal of the convictions on these counts. "The formulation of jury instructions is in the trial court's discretion, so long as the issues presented are fairly and adequately covered." United States v. Bay, 762 F.2d 1314, 1318 (9th Cir.1985). Although a district court may refuse an instruction that gives undue emphasis to one party's version of the facts, an instruction which merely sets forth appropriate principles of law for the jury to apply is not error. See United States v. Goland, 959 F.2d 1449, 1453 (9th Cir.1992), cert. denied, 113 S.Ct. 1384 (1993); United States v. Davis, 597 F.2d 1237, 1240 (9th Cir.1979). Our inquiry "is whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberations." United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991).
 
 
 10
 In this case, the disputed instructions merely set forth appropriate principles of law for the jury to apply. The conspiracy instruction accurately stated the law. It is no defense that a person's participation was minor, or for a short period of time. See Sabari v. United States, 333 F.2d 1019, 1021 (9th Cir.1964); United States v. Mosquera, 779 F.2d 628, 630 (11th Cir.1986). Similarly, the hostage taking instruction does not unduly focus the jury's attention on Gomez's apparent breach of contract. The instruction was a correct statement of the law: breach of contract is not a defense to hostage taking. Because the jury had heard evidence indicating that the defendants had been "ripped off," this instruction was not inappropriate to the facts of the case. In addition, the instruction made clear that the jury had to "find the elements of the offense" in order to convict. It seems very unlikely that either of these single sentences, in jury instructions which took up 30 pages in the Reporter's Transcript, could have caused the jury to ignore Barajas's testimony that he did not force Gomez back to Pomona. Therefore, we reject Barajas and Ortiz's argument.
 
 
 11
 3. Constitutionality of the Hostage Taking Act
 
 
 12
 Ortiz and Barajas next argue that the Hostage Taking Act is unconstitutional on its face because it criminalizes conduct when undertaken by aliens which would not violate the statute if undertaken by United States nationals. We need not reach this claim. As applied here, the Hostage Taking Act does not discriminate against Ortiz and Barajas on the basis of their nationality. Although the Act punishes some aliens where similarly situated nationals would not be punished, such disparate treatment did not occur here. Because the victim here was not a national of the United States, Barajas's and Ortiz's actions would have violated the statute even if they were taken by a United States nationals. Outside of the First Amendment context, a defendant cannot challenge a statute merely because it would be unconstitutional as applied to another person's conduct. See Osborne v. Ohio, 110 S.Ct. 1691, 1697 n. 8 (1990); United States v. Raines, 362 U.S. 17, 21 (1960); Yazoo & Miss. Val. R.R. v. Jackson Vinegar Co., 226 U.S. 217, 219-20 (1912). Because Ortiz and Barajas do not raise a First Amendment challenge, they have no standing to challenge the Hostage Taking Act on its face.
 
 4. Limitations on Cross-Examination
 
 13
 Ortiz argues that the district court prevented the defendants from pursuing lines of cross-examination which would have established bias on the part of prosecution witnesses and otherwise undermined their credibility. In the separate appeals of codefendants Peral, Barraza, Bonilla, and Linarez, two different panels of this court have considered this argument and resolved it in favor of the prosecution. See Peral-Cota, supra; United States v. Bonilla-Guillen, Nos. 91-50111, 91-50117 (9th Cir. October 2, 1992) (memorandum). Because these prior holdings are the law of the case, we are bound by them unless they are clearly erroneous. See supra. We find no such error in the prior panels' decisions.
 
 
 14
 The Sixth Amendment Confrontation Clause guarantees a defendant the right to cross-examine witnesses against him. See Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). The right to cross-examination "includes the right to show the witness's possible bias or self-interest in testifying." United States v. McClintock, 748 F.2d 1278, 1289 (9th Cir.1984), cert. denied, 474 U.S. 822 (1985); see Davis v. Alaska, 415 U.S. 308, 316-17 (1974). District courts, however, retain "wide latitude" to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679. In determining whether the Confrontation Clause has been violated, the test is whether a reasonable jury "might have received a significantly different impression" of the witness's credibility had the defendant been allowed to pursue the line of cross-examination. Id. at 680.
 
 
 15
 Here, we conclude that the additional cross-examination sought by the appellants would have been cumulative. The district court allowed defense counsel to inquire whether the government had agreed not to prosecute Gomez for entering the country illegally. Although the court did not allow counsel to inquire whether Gomez had received a work permit allowing him to remain in the country in exchange for his testimony, we do not believe that a reasonable jury would have received "a significantly different impression" of Gomez's credibility had it known this additional aspect of his deal with the government. We certainly do not believe that the two prior panels clearly erred in affirming the district court's limitations of cross-examination.[5]
 
 
 16
 5. Refusal to Allow the Police Report to be Read into Evidence
 
 
 17
 Ortiz argues that the district court erred when it refused to admit part of a police report prepared shortly after Ortiz's arrest as past recollection recorded under Federal Rule of Evidence 803(5). We need not decide whether the district court erred in this decision, for we conclude that any error was harmless. Regardless of whether we apply the "fair assurance" or the "more probable than not" harmless error standard in a case like this, see United States v. Hitt, 981 F.2d 422, 425 (9th Cir.1992) (noting conflict in Ninth Circuit cases), we do not believe that the district court's refusal to admit the police report requires reversal. Gomez had already admitted that he had given a false name to the police in the apartment. That was the issue that was key to his impeachment. All the report would have shown was that he had given a different false name than he had testified to giving. The jury could have easily credited this discrepancy to the failure of Gomez's (or Bird's) memory. Ortiz does not argue that Gomez had any reason to lie to the jury about which false name he gave the police officers, and it is highly unlikely that the jury would have significantly discredited his testimony had they known of the difference.
 
 
 18
 6. Sentence on the Transporting and Harboring Counts
 
 
 19
 Barajas was convicted of transporting illegal aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(B), and of harboring illegal aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(C). The district court sentenced him to concurrent terms of 168 months on each count. Ortiz was convicted of transporting illegal aliens in violation of 8 U.S.C. Sec. 1324(a)(1)(B). The district court sentenced him to a term of 87 months on this count.
 
 
 20
 The statute provides a maximum sentence of five years for these offenses. See 8 U.S.C. Sec. 1324(a)(1). The government concedes that the sentences on these counts were unlawful. Because the sentences were imposed in violation of law, we order the district court, under Fed.R.Crim.P. 35(a)(1), to reduce them to the statutory maximum of 60 months.
 
 7. Conclusion
 
 21
 We affirm Ortiz's and Barajas's convictions. However, we vacate their sentences on the transporting and harboring illegal aliens counts, and we remand for the imposition of the statutory maximum sentence on these counts.
 
 
 22
 AFFIRMED IN PART, VACATED IN PART, and REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 Honorable Frank A. Kaufman, Senior United States District Judge for the District of Maryland, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 Ortiz and Barajas were tried together along with codefendants Ivan Linarez-Raygoza, Moises Barazza-Armenta, Sergio Peral-Cota, and Maria Bonilla-Guillen
 
 
 [2]
 Ortiz claims that he lived in Apartment D at the time of the search. The government does not dispute that he has standing to contest this warrantless search
 
 
 [3]
 The statute, 18 U.S.C. Sec. 1203, reads:
 (a) Except as provided in subsection (b) of this section, whoever, whether inside or outside the United States, seizes or detains and threatens to kill, to injure, or to continue to detain another person in order to compel a third person or a governmental organization to do or abstain from doing any act as an explicit or implicit condition for the release of the person detained, or attempts to do so, shall be punished by imprisonment for any term of years or for life.
 (b)(1) It is not an offense under this section if the conduct required for the offense occurred outside the United States unless--
 (A) the offender or the person seized or detained is a national of the United States;
 (B) the offender is found in the United States; or
 (C) the governmental organization sought to be compelled is the Government of the United States.
 (2) It is not an offense under this section if the conduct required for the offense occurred inside the United States, each alleged offender and each person seized or detained are nationals of the United States, and each alleged offender is found in the United States, unless the governmental organization to be compelled is the Government of the United States.
 (c) As used in this section, the term "national of the United States" has the meaning given such term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22)).
 
 
 [4]
 This would not be a common occurrence, however, because these days the term applies principally, if not exclusively, to natives of American Samoa. See Hampton v. Mow Sun Wong, 426 U.S. 88, 91 n. 1 (1976)
 
 
 [5]
 The other restrictions the district court placed on cross-examination do not rise to the level of a Confrontation Clause violation, either. The most troubling of these restrictions was the district court's refusal to allow defense counsel to ask about the witnesses' opportunity to engage in collusive conduct and coordinate their testimony. The district court admitted testimony that the witnesses were friends who came from the same state in Mexico and had known each other for a long time. Yet the district court refused to allow the defendants to ask questions which might have elicited specific opportunities for collusion. Although the prohibited testimony might have somewhat enhanced the inference that the witnesses had an opportunity to coordinate their testimony, the jury already knew that the witnesses had known each other in Mexico for some time and had decided to cross the border together. The excluded testimony regarding collusion would not have created a significantly different impression of the witnesses' credibility