**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

MARC MCMAIN KEYSER,
*Defendant-Appellant*.

No. 10-10224

D.C. No.
2:08-cr-00538-
FCD-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Senior District Judge, Presiding

Argued and Submitted
May 17, 2012—San Francisco, California

Filed December 6, 2012

Before: Stephen Reinhardt, Richard R. Clifton,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Criminal Law

The panel affirmed convictions for mailing threatening communications under 18 U.S.C. § 876(c) and for communicating hoaxes regarding the presence of a biological weapon under 18 U.S.C. § 1038(a), but vacated the sentence and remanded for resentencing in a case in which the defendant mailed to a congressman, a Starbucks, and a McDonald's sugar packets labeled "Anthrax."

The panel held that the mailings to Starbucks and McDonald's constituted true threats unprotected by the First Amendment's protection, and that the defendant's hoax speech was not protected under the First Amendment because false and misleading information indicating an act of terrorism tends to incite a tangible negative response by law enforcement, emergency workers, and citizens.

The panel rejected the defendant's argument that because his statements were addressed to a generic "manager," not to specific natural persons, he cannot be convicted under § 876(c).

The panel held that the district court did not err in refusing the defendant's proposed instruction on his theory of the case (*i.e.,* that he did not intend for people to believe that he was actually sending out anthrax) or in defining

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"reasonable person." The panel wrote that the instructions' use of "under circumstances" was adequate to inform the jury that it was to evaluate the defendant's statements in context.

The panel rejected the defendant's contention that the prosecutor engaged in impermissible vouching. The panel did not decide whether a statement by the prosecutor misled the jury as to how to interpret "reasonable person" because the defendant did not show it is more probable than not that the verdict would have been materially different if the prosecutor had not made the statement.

The panel held that in applying to each of the Starbucks and McDonald's counts an enhancement under U.S.S.G. § 2A6.1(b)(4) for substantial governmental expenditures, the district court abused it discretion when it considered as relevant conduct mailings for which the defendant was not convicted, which would not be grouped with the Starbucks and McDonald's mailings under U.S.S.G. § 3D1.2 had they resulted in convictions.

---

### COUNSEL

John Balazs, Sacramento, California, for Appellant.

Jean M. Hobler, Assistant United States Attorney, Sacramento, California, for Appellee.

**OPINION**

CLIFTON, Circuit Judge:

In an effort to drum up publicity for a self-published book on the dangers of anthrax, Marc Keyser feigned multiple acts of biological terrorism. After mailing hundreds of packets of powder labeled "Anthrax"—which were actually full of sugar—Keyser was convicted on two counts of mailing threatening communications under 18 U.S.C. § 876(c) ("threat" counts) and three counts of communicating false or misleading information regarding the presence of a biological weapon under 18 U.S.C. § 1038(a) ("hoax" counts). He was sentenced to 51 months in prison. He now appeals his conviction and sentence.

Keyser contends that all of his convictions should be overturned because his communications were protected expression under the First Amendment. We disagree, concluding that his statements fall into categories of speech that do not enjoy constitutional protection. He also argues that he cannot be convicted under the threat statute, because his statements were addressed to a generic "manager," not to specific natural persons. The title of "manager," however, sufficiently indicates that the mailings were addressed to natural persons, which is all the statute requires. *See United States v. Havelock*, 664 F.3d 1284, 1293 (9th Cir. 2012) (en banc). In addition, Keyser raises multiple challenges to the jury instructions and alleges prosecutorial misconduct during closing arguments, but these claims are unpersuasive. We affirm his convictions.

We do, however, agree with Keyser that the district court improperly calculated his sentencing range under the advisory Sentencing Guidelines when it applied an enhancement for substantial governmental expenditures on the basis of conduct that included mailings for which he was not convicted. The Guidelines describe the appropriate realm of relevant conduct, and the district court's consideration of conduct beyond that scope when it decided to apply the four-level enhancement was procedural error. We therefore vacate the sentence and remand for resentencing.

## I. Background

In the aftermath of the September 11th terrorist attacks, Marc Keyser began researching terrorism, including the use of anthrax. He wrote a book on anthrax, ultimately entitled "Anthrax: Shock and Awe Terror," to spread the message that an anthrax attack could wreak havoc on the country. After unsuccessfully attempting to obtain a publisher, Keyser self-published his book on CDs and tried to market it.

In an attempt to secure publicity for the book, Keyser mailed a package to the Sacramento News & Review in 2007. The package contained a letter, a CD containing Keyser's book, and a small spray can with a label stating "ANTHRAX" and displaying a biohazard symbol. The package prompted employees to call 911 and to evacuate the building, and numerous emergency agencies responded.

FBI agents subsequently visited Keyser at his home, informed him that his mailing had upset people and led to a hazardous materials unit response, and warned him that he could be criminally prosecuted. An agent advised him not to do it again, and Keyser said that he would not.

### A. 2008 Mailings

The next year, Keyser sent out approximately 120 packages to various news outlets, elected officials, and businesses. The materials sent to news outlets and elected officials were placed in business envelopes. They contained a CD printed with a picture of Colin Powell, the book title, and Keyser's name. The CD contained over half of the contents of Keyser's book. He attached a white sugar packet to the front of the CD with the sugar markings covered by a label stating "Anthrax" in large letters, "Sample" in smaller letters, and an orange and black biohazard symbol.

The materials sent to businesses were placed in purple greeting card envelopes. They contained a card with the same Colin Powell picture and "Anthrax" sugar packet on the front and a short blurb about the book inside. The card directed recipients to visit a website to learn more about the book.

Recipients of the packages responded in various ways, but only three specific mailings are relevant for this appeal: one to Congressman George Radinovich, one to a Starbucks, and one to a McDonald's.

### 1. Radinovich Mailing

Keyser sent a business envelope with a CD and an "Anthrax"/"Sample"-labeled sugar packet to Congressman Radinovich's Modesto, California, office. The envelope was opened by staff members who were aware of previous anthrax threats to members of Congress and who had been briefed regarding suspicious packages. Upon seeing the "Anthrax" sugar packet and the words "Anthrax: Shock and

Awe" on the CD, they called the police. Per a detective's instructions, they left the envelope in a conference room and vacated the office. Police, fire trucks, ambulances, and a hazardous materials truck all responded to the scene. One staffer testified that when she saw the package, she felt "[i]nstant concern" because "[t]hose types of things scare you," and that her colleague who had opened the package was "scared to death" and "petrified."

### 2. McDonald's Mailing

Keyser sent a purple envelope to a Sacramento McDonald's restaurant, addressed to "McDonald's" on the first line and "Manager" on the second line. The restaurant's general manager opened the envelope to find one of Keyser's cards. He considered the contents to be "a very frightening letter." He was "scared, but . . . at a loss [and] dropped it and stepped back. Emotionally [he] was kind of shocked and appalled . . . and called 911." Following the 911 operator's instructions to quarantine the area, he left his office and barricaded the door. Police and a hazardous materials team responded.

### 3. Starbucks Mailing

Keyser also sent a purple envelope addressed to "Starbucks" on the top line and "Manager" on the second line to a Sacramento Starbucks. The envelope was postmarked on October 28, 2008, but was not opened until the store manager returned from vacation. The store manager identified the packet as sugar and was not concerned about her safety, but

reported the card after discussing it with a customer in the shop who was a security guard for then-Governor Schwarzenegger. A hazardous materials responder and an FBI agent came to the store to pick up the package.

Federal agents returned to Keyser's home. Keyser admitted the mailings and explained that he was trying to sell his book. He recalled his previous meeting with FBI agents and his agreement not to send out such mailings again but distinguished the 2008 mailings from his 2007 mailing by pointing out that the latest mailings included the word "Sample" under "Anthrax."

## B. Procedural Background

Keyser was indicted on ten counts of hoax in violation of 18 U.S.C. § 1038(a) and three counts of mailing threatening communications in violation of 18 U.S.C. § 876(c). After a trial, a jury convicted Keyser on three counts of hoax under § 1038(a) for the mailings to Congressman Radinovich, McDonald's, and Starbucks, and two counts of threatening mailings under § 876(c) for the mailings to McDonald's and Starbucks. The jury acquitted him on all other counts.

Prior to Keyser's sentencing, the district court calculated the advisory Sentencing Guidelines range. The § 1038(a) and § 876(c) counts resulting from the McDonald's mailing were grouped together because they involved the same victim, and, similarly, the Starbucks counts were grouped together. The probation officer assigned a base offense level of 12 for each of the three counts or group of counts.

The district court adopted the findings of the probation officer in the Presentence Report and increased the offense level by four for each of the three mailings in accordance with U.S.S.G. § 2A6.1(b)(4), which provides for a four-level increase when an offense resulted in a substantial expenditure of funds or disruption in service available for a real emergency. The Congressman Radinovich offense was increased by six levels because it involved a government official. The resulting adjusted offense levels were as follows: Congressman Radinovich hoax, 22; McDonald's threat and hoax, 16; Starbucks threat and hoax, 16. Because the McDonald's and Starbucks groups were within 8 levels of the Congressman Radinovich offense, Keyser's Combined Offense Level was calculated by taking his highest offense level (22) and adjusting it upward by two units in accordance with the procedure for multiple counts outlined in U.S.S.G. § 3D1.4. Keyser had a final Combined Adjusted Offense Level of 24 and a Criminal History Category of I, which resulted in a Guidelines range of 51–63 months. The district court sentenced him to 51 months in prison and ordered him to pay $6,677.70 in restitution. Keyser filed a timely notice of appeal.

## II. Discussion

### A. First Amendment Challenge

Keyser argues that he cannot be convicted for his mailed statements because they are protected by the First Amendment. "[A]s a general matter, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002) (internal quotation marks omitted). The Supreme

Court has repeatedly recognized, however, that certain categories of speech do not enjoy the benefit of full First Amendment protection. *See United States v. Alvarez*, 132 S. Ct. 2537, 2544 (2012) (plurality opinion); *United States v. Stevens*, 130 S. Ct. 1577, 1584 (2010). Famously, the First Amendment does not protect someone who falsely cries "fire" in a crowded theater. *See Schenck v. United States*, 249 U.S. 47, 52 (1919).

Keyser was convicted of mailing threatening communications under 18 U.S.C. § 876(c) for his Starbucks and McDonald's mailings and for communicating hoaxes regarding a biological weapon under 18 U.S.C. § 1038(a) for his Starbucks, McDonald's, and Congressman Radinovich mailings. We first look at whether Keyser's convictions under the threat statute violate the First Amendment, then turn to his convictions under the hoax statute.

### 1.   Threats: 18 U.S.C. § 876(c)

Federal law makes it a crime to "knowingly . . . deposit[] or cause[] to be delivered . . . any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another." 18 U.S.C. § 876(c). This statute "must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam).

Threats generally are not entitled to First Amendment protection. *See id.* ("What is a threat must be distinguished from what is constitutionally protected speech."); *Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 371 (9th Cir. 1996)

("In general, threats are not protected by the First Amendment."). "Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *United States v. Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990), *overruled in part on other grounds by Planned Parenthood of the Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 290 F.3d 1058, 1066–70 (9th Cir. 2002) (en banc). In order to be subject to criminal liability for a threat, the speaker must subjectively intend to threaten. *See United States v. Bagdasarian*, 652 F.3d 1113, 1117–18 (9th Cir. 2011). It is not necessary that the speaker intend to follow through on the threat, commit an assault, or inflict actual physical harm, however. *See Planned Parenthood*, 290 F.3d at 1075.

On independent review, in accordance with the approach outlined in *Planned Parenthood*, 290 F.3d at 1070,[1] we conclude that Keyser's mailings to Starbucks and McDonald's constituted true threats and fall outside of the First Amendment's protection.

---

[1] *Planned Parenthood* directs us first to determine whether the district court correctly defined a threat and properly instructed the jury regarding the statute's requirements for liability. If so, we defer to the jury's findings on historical facts, credibility determinations, and elements of statutory liability. If statutory liability is supported by sufficient evidence, we then engage in an independent review of any constitutional facts—here, whether the statements were true threats. 290 F.3d at 1070. The district court's instructions were proper and the record contains sufficient evidence to support the jury's conviction on those instructions, so we focus on the independent review of the constitutional fact.

The mailings satisfy the objective standard by which we define a threat. *See Orozco-Santillan*, 903 F.2d at 1265. A reasonable sender would foresee that recipients would understand the mailings to be threats to injure them. Given the broad media coverage of actual anthrax being sent through the mail in 2001, a reasonable person would understand that a recipient would perceive a packet of powder with the word "Anthrax" and a biohazard symbol printed on it as a threat. A reasonable person would also understand that the word "sample" would not alleviate that concern—if read and processed at all, the word would likely indicate a small amount of the actual substance, rather than a prop or representation.

We also conclude, after reviewing the record as a whole, that Keyser had the requisite subjective intent to threaten when he mailed the packages to McDonald's and Starbucks. At trial, Keyser testified that he was not trying to scare the people who received his packages and letters, and that he did not want people to believe the packets actually contained anthrax. However, he did agree at trial that he knew that some people "might at least briefly be concerned that maybe this is real anthrax." He also stated that he intended the packets to be "provocative" and wanted people to have "a reaction" and be "concerned about the danger we're in." He testified that he was not trying to cause a panic, but agreed that attracting attention to the book "was definitely worth it even if people were frightened."

One of the agents who interviewed Keyser after his arrest testified that Keyser said, "Well, I did want it to cause concern. I wanted to cause a buzz." Keyser also told him that "[h]e wanted people to believe they had received a sample of Anthrax; that they wanted him [sic] to have the visceral

reaction to seeing it so it would drive his message home." The same agent reported that Keyser expressed that he expected the FBI to contact him after he sent out his 2008 mailings.

The record also establishes that Keyser was aware that the 2001 anthrax attacks had caused deaths, and that the press and members of Congress had been targeted in those attacks. Keyser sent mailings to persons within those same groups. He was also aware that his 2007 mailing upset recipients and led to a hazardous materials team response.

Finally, we note that the jury appears not to have believed Keyser's self-interested testimony regarding his alleged lack of intent. The jury convicted Keyser on the basis of instructions that required a finding of subjective intent. Though we do not defer to the jury's finding of intent, because, in this case, intent is not an element of statutory liability, *cf. Bagdasarian,* 652 F.3d at 1118, we do defer to the jury on credibility determinations, *see Planned Parenthood*, 290 F.3d at 1070.

Taken as a whole, this record convinces us that Keyser possessed the intent to threaten. We therefore conclude, on independent review, that Keyser's statements mailed to McDonald's and Starbucks were true threats unprotected by the First Amendment, and that his convictions under § 876(c) did not violate the Constitution.

## 2. False or misleading information: 18 U.S.C. § 1038(a)

Federal law also makes it a crime to "engage[] in any conduct with intent to convey false or misleading information

under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of" a number of listed statutes, including Title 18, Chapter 10 of the United States Code, which prohibits the possession or transfer of biological agents or toxins for use as a weapon. 18 U.S.C. §§ 175(a), 1038(a).

As with the threat speech, we engage in an independent review. Having done so, we conclude that Keyser's hoax speech is not protected under the First Amendment.[2]

The Supreme Court recently confirmed that "falsity alone may not suffice to bring the speech outside the First Amendment." *Alvarez*, 132 S. Ct. at 2545 (plurality opinion). Instead, cases that condone the criminalization of false speech involve some sort of "legally cognizable harm associated with [the] false statement." *Id.* Indeed, the Court recognized that "speech presenting some grave and imminent threat the government has the power to prevent" was outside the First Amendment's protection. *Id.* at 2544. We conclude that such harm was present here.

False and misleading information indicating an act of terrorism is not a simple lie. Instead, it tends to incite a tangible negative response. Here, law enforcement and emergency workers responded to the mailings as potential acts of terror, arriving with hazardous materials units,

---

[2] We are satisfied that the record contains sufficient evidence such that a jury could find all the elements of the crime satisfied. *See Planned Parenthood*, 290 F.3d at 1070 (explaining that the court inquires into sufficiency of the evidence before reaching independent review of a constitutional fact).

evacuating buildings, sending the samples off to a laboratory for tests, and devoting resources to investigating the source of the mailings. Recipients testified to being "scared to death," "petrified," "shocked and appalled," "worried," and feeling "instant concern." The staffers in Congressman Radinovich's office and the McDonald's manager were deeply concerned for their safety and the safety of those around them until they were informed, hours later, that they were not exposed to anthrax. Prompting law enforcement officials to devote unnecessary resources and causing citizens to fear they are victims of a potentially fatal terrorist attack is "the sort of harm . . . Congress has a legitimate right to prevent by means of restricting speech." *United States v. Alvarez*, 617 F.3d 1198, 1215 (9th Cir. 2010).

Justice Breyer's concurring opinion in *Alvarez* confirms our conclusion that Keyser's hoax speech falls outside the First Amendment's protection. "Statutes prohibiting false claims of terrorist attacks, or other lies about the commission of crimes or catastrophes, require proof that substantial public harm be directly foreseeable, or, if not, involve false statements that are very likely to bring about that harm." *Alvarez*, 132 S. Ct. at 2554 (Breyer, J., concurring) (specifically citing 18 U.S.C. § 1038(a) as an example).[3]

---

[3] Our treatment of Keyser's speech is consistent with the only case we are aware to have addressed this issue directly, *United States v. Brahm*, 520 F. Supp. 2d 619 (D.N.J. 2007). The *Brahm* court analogized to the Supreme Court's decision in *Schenck*, 249 U.S. 47, and explained:

> Section 1038 was designed to prevent and punish phony bomb threats and other such hoaxes where no real threat existed, but law enforcement time and effort would be needlessly (and intentionally) sidetracked into looking for nonexistent weapons and fictitious

## B.  Addressees

Keyser contends that his convictions under 18 U.S.C. § 876(c) cannot stand because his mailings to Starbucks and McDonald's were not addressed to specific persons, as he argues is required by the statute.  The relevant statutory language criminalizes the mailing of a threat "addressed to any other person."  18 U.S.C. § 876(c).  We review de novo Keyser's claim that there was insufficient evidence to sustain the verdicts under § 876(c).  *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008).  Evidence is sufficient if, "viewing [it] in the light most favorable to the prosecution, any rational jury could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* (internal quotation marks omitted).  Any statutory interpretation matters are reviewed de novo as well.  *United States v. Buckholder*, 590 F.3d 1071, 1074 (9th Cir. 2010).

Earlier this year, an en banc panel of this court interpreted the "addressed to any other person" clause of the statute to require that the relevant mailing be addressed to a natural person or persons rather than non-natural entities, such as corporations.  *United States v. Havelock*, 664 F.3d 1284, 1293 (9th Cir. 2012) (en banc).

The addresses in question satisfy this statutory requirement.  The envelopes had the business name (Starbucks or McDonald's) on the first line of the address, the

---

imminent threats.  Such speech would be outside of the protection of the First Amendment, similar to shouting fire in a crowded theater or threatening the president.

*Brahm*, 520 F. Supp. 2d at 626 (internal citations omitted).

word "Manager" on the second line, and no further indication of an addressee within the contents of the mailing. The use of "Manager" in the address sufficiently transforms the addressee from the corporation to a natural person—a Starbucks or McDonald's manager is a natural person. The statutory language "any other person" does not indicate that the "person" in question must be one particular natural person, and Keyser does not cite any authority in support of his argument that such specificity is required.

There is nothing in the *Havelock* court's reasoning that indicates we should require a threat to be addressed to one particular, previously-identifiable person, rather than, as the statute states, "any other person." In fact, the reasoning that led the *Havelock* court to find that the "person" contemplated by the statute does not include a corporation or other non-natural entity supports our conclusion. When looking to use the word consistently across the entire statute, the court explained that a corporation cannot be kidnapped or physically injured. *Havelock*, 664 F.3d at 1291. In addition, "[o]ne of the purposes of § 876 is the preservation of the recipient's sense of personal safety. The recipient's sense of personal safety is simply not implicated when the recipient is an entity." *Id.* at 1292 (internal citation and quotations omitted). A manager, or any other person who falls within a larger group of people, can be kidnapped or injured, and also has his or her own sense of personal safety. The textual reasons for distinguishing between natural persons and non-natural entities do not apply to this situation, and we see no reason to confine the phrase "any other person" to anything less than its own broad terms. Keyser's mailings to the Starbucks and McDonald's managers were addressed to natural persons, so there was sufficient evidence for a jury to convict him under § 876(c).

**C.  Jury Instructions**

Keyser raises a number of issues regarding the instructions given to the jury at trial.  In reviewing jury instructions, this court inquires into "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberations."  *United States v. Dixon*, 201 F.3d 1223, 1230 (9th Cir. 2000).  Instructions are viewed in the context of the overall charge, and the standard of review varies based on the nature of the alleged error.  *Id.*

### 1.  Theory of the case instruction

Keyser argues that the district court erred in failing to give his proposed theory of the case instruction.  "The district court's failure to give a defendant's requested instruction that is supported by law and has some foundation in the evidence warrants per se reversal, unless other instructions, in their entirety, adequately cover that defense theory."  *United States v. Marguet-Pillado*, 648 F.3d 1001, 1006 (9th Cir. 2011) (internal quotation marks and citations omitted).  In other words, a defendant is entitled to have his theory fairly and adequately covered by the instructions, but is not entitled to an instruction in a particular form.  *See Dixon*, 201 F.3d at 1231.  We review de novo whether the district court's instructions adequately presented the defense's theory of the case.  *Id.* at 1230.  We review for abuse of discretion the formulation of an instruction that fairly and adequately covered the elements of the offense.  *Id.*

Keyser's proposed instruction set out the theory that Keyser did not intend for people to believe that he was actually sending out anthrax.  The proposed instruction provided, in relevant part:

>As to the 2008 mailings, the defense theory of the case is that Mr. Keyser relied on a suggestion by a government official, FBI Agent Timothy Lester, that if he intended to include a prop with his mailing, he should include the word "prop" or "sample." The defense theory is that by using the word "sample" and a sugar packet, Mr. Keyser intended for people to understand that the mailing contained a prop, and that the mailing did not actually contain anthrax. If you find that Mr. Keyser believed that by changing the nature of the mailing in these ways, he intended to convey to people that the mailing did not actually contain anthrax, you must find him not guilty.

"A trial judge may refuse an instruction if its language gives undue emphasis to defendant's version of the facts rather than being a statement of appropriate principles of [the] law for the jury to apply to the facts, or if it would tend to influence the jury towards accepting the defendant's version of the facts." *United States v. Davis*, 597 F.2d 1237, 1240 (9th Cir. 1979) (internal quotation marks and citation omitted); *see also United States v. Goland*, 959 F.2d 1449, 1453 (9th Cir. 1992) (quoting *Davis*). That is the case here. The proposed instruction signaled that Keyser's theory of the case was a lack of intent, but it focused on Keyser's version of the facts rather than the legal principle.

The district court's instructions made clear that the jury must find intent in order to convict Keyser. On the hoax counts, the court instructed the jury that they must find "Keyser engaged in conduct with the intent to convey false or

misleading information." On the threat counts, the court instructed the jury that they must find "Keyser intended to communicate a threat to injure the person of the addressee or another."

As in *Davis* and *Goland*, the instructions made it clear that the jury had to find intent in order to convict, Keyser had the opportunity to testify, of which he took advantage, and defense counsel contested intent during closing arguments. *See Davis*, 597 F.2d at 1240 n.7; *Goland*, 959 F.2d at 1454. The district court did not err in refusing Keyser's proposed instruction on his theory of the case.

### 2.   Reasonable person standard

Keyser argues that the district court erred in defining the "reasonable person" standard to the jury. Keyser does not dispute that the definition was legally correct but instead contends that it was confusing, circular, and inadequate to guide the jury. Alleged errors in the district court's formulation of an instruction are reviewed for abuse of discretion. *United States v. Reese*, 2 F.3d 870, 883 (9th Cir. 1993).

The district court twice defined a "reasonable person." With respect to the hoax counts, the court instructed: "A 'reasonable person' is an objectively reasonable person. The persons to whom the information was conveyed may or may not be objectively reasonable persons. It is for you to decide who is a reasonable person." With respect to the threat counts, the court instructed: "A 'reasonable person' is an objectively reasonable person. It is for you to decide who is a reasonable person."

These jury instructions adequately indicated that the reasonable person standard is an objective one, not based on the actual people involved in this case.  Though more elaboration might not have been improper, the instructions did not mislead the jury, nor were they inadequate to guide the jury.  *See Dixon*, 201 F.3d at 1230.  The district court did not abuse its discretion in instructing as to the "reasonable person" standard.

### 3.  "Context"

Keyser also argues that the jury instructions did not adequately inform the jury that they were to evaluate Keyser's statements in context, as required by *Fogel v. Collins*, 531 F.3d 824, 831 (9th Cir. 2008).  Keyser's proposed reasonableness and hoax instructions included use of the specific word "context."

The court's instructions did not include the actual word "context," but they did instruct the jury to look beyond the literal words of the mailing.  The threat instructions defined a threat as "a communication made *under circumstances* in which a reasonable person would foresee" that a recipient would find it a threat (emphasis added).  Similarly, the hoax instruction said that the jury must find "Keyser conveyed information *under circumstances* in which a reasonable person could believe it" (emphasis added). Though the court in *Fogel* examined the communication "in light of the full context available," nowhere did it state that the word "context" must be used in jury instructions regarding threats or hoaxes.  531 F.3d at 831.  There is no requirement that the court use the particular word "context."  Here, "under circumstances" directed the jury to consider exactly what

Keyser requested—evidence in addition to the literal words of the mailing.

## D.  Closing Argument

Keyser also alleges that a statement the prosecutor made during closing argument constituted impermissible vouching and misled the jury on how to interpret the reasonable person standard.  We review for abuse of discretion.  *See United States v. Nobari*, 574 F.3d 1065, 1073 (9th Cir. 2009).  To demonstrate an abuse of discretion, the alleged prosecutorial misconduct must be considered in the context of the entire trial, and the defendant must show that it is "more probable than not that the misconduct materially affected the verdict." *United States v. Sarkisian*, 197 F.3d 966, 988 (9th Cir. 1999) (citations omitted).

The prosecutor argued the following:

> Would reasonable people believe they were receiving Anthrax?  That was the [defense counsel's] first [question].  The answer to that is yes.  It doesn't – the law does not require that everybody who received it fear that they were receiving anthrax, simply that a reasonable person under the circumstances would believe it.  *You know that's the case because reasonable people testified in this case and they did believe it.*

(Emphasis added.)   Keyser first argues that the italicized statement above was impermissible vouching by the government.  A prosecutor may not place "the prestige of the government behind a witness through personal assurances of

the witness's veracity." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). Such statements are improper even if they are implicit. *See United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985). Referring to the testifying witnesses as "reasonable" is not an assurance of the veracity of those witnesses, however, so the statement does not qualify as prosecutorial vouching.

Keyser also argues that the statement misled the jury as to how to interpret the "reasonable person" standard by implying that the jurors were supposed to be deciding whether or not the testifying witnesses were reasonable, rather than applying an objective, witness-independent standard.

We need not decide whether the statement was misleading because Keyser has not shown that it is more probable than not that the verdict would have been materially different if the prosecutor had not made the statement in question. *See Sarkisian*, 197 F.3d at 988. The given jury instructions were sufficient to cure any potential defect. Though not as elaborate as Keyser might have liked, the instructions did clearly tell the jury that they were to apply an objective standard and that it was for them to decide who was and who was not a reasonable person. In addition, the hoax instruction explicitly stated that the recipients of Keyser's letters may or may not be objectively reasonable people.

We therefore affirm Keyser's convictions on all counts.

## E. Sentencing

The district court did, however, procedurally err when calculating the applicable Sentencing Guidelines range. *See*

*United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).  The district court applied a four-level enhancement to each of the Starbucks and McDonald's groups of counts pursuant to Section 2A6.1(b)(4) of the Guidelines, finding that the offenses of conviction resulted in substantial government expenditures.  In so determining, the district court considered the government's expenditures in response to other mailings for which Keyser was not convicted.

This consideration was contrary to the direction contained in the Guidelines. The Guidelines specify that the district court may consider other acts as part of the "course of conduct or common scheme or plan" related to a conviction offense only if those other acts must be grouped with the conviction offense under U.S.S.G. § 3D1.2(d).  *See* U.S.S.G. § 1B1.3(a)(2).  Hoaxes and threatening communications, however, are specifically excluded from grouping under U.S.S.G. § 3D1.2(d) because they are described in U.S.S.G. § 2A6.1.  Grouping is inappropriate because the counts involved different victims and different acts.  *See* U.S.S.G. § 3D1.2(a).  The district court abused its discretion when it considered other mailings as relevant conduct when those mailings would not be grouped with the Starbucks and McDonald's mailings under U.S.S.G. § 3D1.2(d) had they resulted in convictions.

Improper calculation of the Guidelines range is procedural error.  Therefore, we vacate the sentence and remand for resentencing.  *See United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006).

**AFFIRMED in part, VACATED and REMANDED in part.**