TASHIMA, Circuit Judge,
concurring in the judgment:
I concur in the result reached by the majority, but only under the compulsion of United States v. Perelman, 695 F.3d 866 (9th Cir.2012), cert. denied, — U.S. -, 133 S.Ct. 2383, 185 L.Ed.2d 1069 (2013). While the majority faithfully applies Perelman, Perelman itself ignores the teaching of United States v. Alvarez, — U.S. -, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012), and sanctions the punishment of pure speech, solely because that speech is a falsehood. Because I cannot agree with Perelman’s reasoning, I concur only in the judgment.
Elven Swisher wore military medals without authority to a Marine Corps League event and was convicted of violating 18 U.S.C. § 704(a). The record contains only one photograph of that event. No evidence suggests that Swisher wore the medals in any other context, and no evidence connects Swisher’s wearing of the medals to his scheme wrongfully to obtain benefits from the Department of Veterans Affairs or its predecessor the Veterans Administration, or any other fraudulent scheme. Swisher was convicted because he told a lie. I do not believe that § 704(a) should be read to punish such pure speech.
Perelman was a.facial First Amendment challenge to § 704(a). The panel held that implying an intent to deceive as an element of the crime cured any First Amendment problem. 695 F.3d at 871 (“Accordingly, we hold that a person violates the unauthorized wearing portion of 18 U.S.C. § 704(a) only if he or she has an intent to *525 deceive.”). As construed by the majority, Perelman’s “intent to deceive” is nothing more than the intent to tell a lie. See Maj. Op. at 522 (adopting dictionary definition of “deceive” as meaning “to make (a person) believe what is not true”); id. at 522 (§ 704(a) “applies only to individuals who wear the medal for the purpose, of falsely communicating they are entitled to wear them”). This is hardly a “narrowing construction” of the statute. Id. at 522 Adding intent to deceive as an element adds nothing to “intent to wear the medal.” It has no narrowing or limiting force. Perelman and the majority’s interpretation of Perelman turn § 704(a) into a statute that criminalizes false speech per se.
But we have observed that criminalizing pure speech is contrary to the First Amendment. See United States v. Alvarez, 617 F.3d 1198, 1213 (9th Cir.2010) (“We are aware of no authority holding that the government may, through a criminal law, prohibit speech simply because it is knowingly factually false.”), aff'd, — U.S. -, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012). We further observed in Alvarez that:
we presumptively protect all speech against government interference, leaving it to the government to demonstrate, either through a well-crafted statute or case-specific application, the historical basis for a compelling need to remove some speech from protection ... for some reason other than the mere fact that it is a lie [ ].
Id. at 1205.
More importantly Perelman and the majority’s application of it in this as-applied challenge, are contrary to the Supreme Court’s teaching in Alvarez. As the majority reads Perelman, it allows a general “threat of liability or criminal punishment to roam at large, discouraging or forbidding the telling of [a] lie in contexts where harm is unlikely or the need for [a] prohibition small.” Alvarez, 132 S.Ct. at 2555 (Bryer, J., concurring in the judgment). It simply sweeps too broadly in terms of the First Amendment. It ignores that “cases that condone the criminalization of false speech involve some sort of ‘legally cognizable harm associated with [the] false statement.’ ” United States v. Keyser, 704 F.3d 631, 640 (9th Cir.2012). It fails to understand § 704(a) “with the commands of the First Amendment clearly in mind.” United States v. Bagdasarian, 652 F.3d 1113, 1116 (9th Cir.2011) (quoting Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969) (per curiam) (internal quotation marks omitted)). It construes § 704(a) as a statute that criminalizes false speech per se.
I quote just a few passages from Alvarez to illustrate just how far from the teaching of Alvarez both Perelman and the majority’s application of it have strayed:
• Absent from those few categories where the law allows content-based regulations of speech is any' general exception to the First Amendment for false statement. Alvarez, 132 S.Ct. at 2544 (Kennedy, J., plurality opinion).[1]
• The court has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection. Id. at 2545.
• [0]ur law and tradition ... reject[ ] the notion that false speech should be in a general category that is presumptively unprotected. Id. at 2546-47.
• The Government has not demonstrated that false statements generally should constitute a new category of *526 unprotected speech on this basis. Id. at 2547.
• Were the Court to hold that the interest in truthful discourse alone is sufficient to sustain a ban on speech, absent any evidence that the speech was used to gain a material advantage, it would give government a broad censorial power unprecedented in the Court’s cases or in our constitutional tradition. The mere potential for the exercise of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom. Id at 2547-48.
• [T]he [Stolen Valor] Act conflicts with free speech principles. Id. at 2548.
Finally, Perelman’s limiting effort — the addition of “intent to deceive” as an element of § 704(a) — was not even necessary and is incomplete. Perelman holds that “[bjecause the statute requires an intent to deceive, the examples listed above do not fall within the scope of the statute.” 695 F.3d at 871. But no one ever contended that the Stolen Valor Act reached such examples — movies, theatrical productions, school children, Halloween costumes, and parades. See id. at 870 (listing examples). In fact, the Alvarez plurality assumed “that [the Stolen Valor Act] would not apply to, say, a theatrical performance.” 132 S.Ct. at 2547 (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 20, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). More troubling, however, is that Perelman fails to address the very evil addressed by Justice Breyer’s concurrence in Alvarez:
[F]ew statutes, if any simply prohibit without limitation the telling of a lie, even a lie about one particular matter. Instead, in virtually all these instances limitations of context, requirements of proof of injury, and the like, narrow the statute to a subset of lies where specific harm is more likely to occur. The limitations help to make certain that the statute does not allow its threats of liability or criminal punishment to roam at large, discouraging or forbidding the telling of the lie in contexts where harm is unlikely or the need for the prohibition is small.
The statute before us [i.e., the Stolen Valor Act] lacks any such limiting features. It may be construed to prohibit only knowing and intentional acts of deception about readily verifiable facts within the personal knowledge of the speaker, thus reducing the risk that valuable speech is chilled. But it still ranges very broadly. And that breadth means that it creates a significant risk of First Amendment harm. As written, it applies in family, social, or other private contexts, where lies will often cause little harm. It also applies in political contexts, where although such lies are more likely to cause harm, the risk of censorious selectivity by prosecutors is also high.... And so the prohibition may be applied where it should not be applied, for example to bar stool braggadocio or, in the political arena, subtly but selectively to speakers that the Government does not like. These considerations lead me to believe that the statute as written risks significant First Amendment harm.
Id. at 2555 (Bryer, J., concurring in the judgment) (emphasis added).
Even accepting Perelman on its own terms that, unlike § 704(b)’s content-based restriction on speech, § 704(a) is aimed at suppressing conduct, the majority recognizes the inherent tension between Perelman and Supreme Court precedent, noting that “[i]n certain circumstances, the Supreme Court has recognized similar symbolic conduct as inherently expressive and therefore deserving of heightened First *527 Amendment protection.” Maj. Op. at 523 (citing Texas v. Johnson, 491 U.S. 397, 404-06, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (holding that burning the American flag was expressive conduct protected by the First Amendment); Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (holding that wearing black armbands to protest Vietnam War was “the type of symbolic act that is within the Free Speech Clause” and “was clearly akin to ‘pure speech’ which, [the Court has] repeatedly held, is entitled to comprehensive protection under the First Amendment”)). No conduct can be more “inherently expressive and therefore deserving of heightened First Amendment protection” than the wearing of a military medal at a Marine Corps League event.
As the foregoing discussion demonstrates, there is, at the least, substantial doubt as to whether Perelman was correctly decided. I recognize, however, that, as a three judge panel, we are bound by Perelman. See Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir.2001). I therefore reluctantly concur in the judgment.

. The bullet-point quotations that follow are also from the plurality opinion.