**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee*,

v.

ELVEN JOE SWISHER,
  *Defendant-Appellant*.

No. 11-35796

D.C. Nos.
1:09-cv-00055-BLW
1:07-cr-00182-BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted
May 16, 2014—Portland, Oregon

Filed October 29, 2014

Before: Arthur L. Alarcón, A. Wallace Tashima,
and Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta;
Concurrence by Judge Tashima

# SUMMARY[*]

### Habeas Corpus

The panel affirmed the district court's denial of Elven Joe Swisher's motion pursuant to 28 U.S.C. § 2255 challenging a conviction for wearing military medals without authorization in violation of 18 U.S.C. § 704(a) (2002 ed.).

Swisher argued that his conduct in wearing the medals qualifies as expressive conduct, and therefore the application of § 704(a) to him violated his First Amendment rights. The panel held that Swisher's contention is foreclosed by *United States v. Perelman*, 695 F.3d 866 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2383 (2013), which concluded that the First Amendment does not prevent Congress from criminalizing the act of wearing military medals without authorization and with intent to deceive.

Judge Tashima concurred in the judgment, but only under the compulsion of *Perelman*, with whose reasoning he disagrees.

## COUNSEL

Joseph Theodore Horras, Smith Horras, P.A., Boise, Idaho, for Defendant-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Victoria L. Francis (argued), Assistant United States Attorney; Jessica T. Fehr, Special Assistant to the Attorney General, Billings, Montana, for Plaintiff-Appellee.

## OPINION

IKUTA, Circuit Judge:

Defendant Elven Joe Swisher was convicted for wearing military medals without authorization in violation of 18 U.S.C. § 704(a) (2002 ed.).  After Swisher's conviction became final, the Supreme Court struck down 18 U.S.C. § 704(b) (2011 ed.), which criminalized making false claims regarding an entitlement to military honors, on First Amendment grounds.  *United States v. Alvarez*, 132 S. Ct. 2537 (2012).  Swisher moved the district court under 28 U.S.C. § 2255 to have his conviction for wearing unauthorized medals overturned on similar grounds, and the district court denied relief.  In the time since Swisher brought this appeal, we have determined that § 704(a) is a facially constitutional statute.  *See United States v. Perelman*, 695 F.3d 866 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2383 (2013).  Because Swisher does not provide any basis for concluding that § 704(a) is unconstitutional as applied to his conduct, we affirm the district court's denial of relief.[1]

I

Swisher enlisted in the United States Marine Corps on August 4, 1954, a little over a year after the Korean War

---

[1] We address Swisher's other claims in an unpublished memorandum disposition filed concurrently with this opinion.

ended. He spent his first year stationed in Middle Camp Fuji, Japan, and the following two at the Naval Annex in Bremerton, Washington. In August 1957, he was honorably discharged from the Marine Corps into the reserves. Upon discharge, he was given a DD-214 discharge document, a typewritten form that provided Swisher's name, education, type of discharge, last duty assignment, last date of service, and similar information regarding his military service. Section 16 of the form required a listing of Swisher's "decorations, medals, badges, commendations, citations and campaign ribbons awarded or authorized." Section 17 asked for a list of Swisher's "wounds received as a result of action with enemy forces." In the authenticated copy of Swisher's original DD-214, the term "N/A" (not applicable) is typed in Sections 16 and 17. The form was signed by the personnel officer for Swisher's unit, Captain W.J. Woodring.

In 1958, a year after his discharge, Swisher applied for disability benefits from the former Veterans Administration (VA) in connection with a shoulder injury stemming from a drunk driving incident that occurred off base in Washington, and a nasal operation that took place shortly before he was discharged. The VA awarded Swisher ten percent disability for shoulder arthritis, but denied Swisher's subsequent applications for increased disability benefits for the same injuries.

In 2001, more than forty years after his discharge, Swisher filed a new claim for service-related Post-Traumatic Stress Disorder (PTSD). In his application, Swisher claimed he suffered from PTSD as a result of his participation in a secret combat mission in North Korea in August or September 1955. Along with his application, Swisher provided a self-published narrative that described the North

Korea operation. According to the narrative, Swisher was selected for a secret combat mission while stationed at Middle Camp Fuji, Japan. Swisher and approximately 130 other Marines were flown by helicopter to an unknown location in China or North Korea. After the unit disembarked and began to approach a designated hill, it came under heavy enemy gunfire and sustained significant casualties. Swisher was severely wounded and flown back to Japan where he received medical treatment. He later learned he had sustained a "concussion, broken nose, (lost a piece of meat out of the right side), broken foot, broken teeth, collar bone separation, cracked ribs and grenade fragments in both arms, both legs, and torso."

While in the Third Battalion Medical Center recovering from his wounds, Swisher claimed that he and the other wounded were visited by an unnamed captain, who presented a Purple Heart to each of the wounded men, including Swisher. The Captain "then told us that because of the participation in combat, all the survivors were entitled to and should wear the National Defense Medal, Korean War Service Medal and the Korean War U.N. Service Medal and Ribbons," along with Navy Commendation Ribbons with a Bronze V. Swisher claims he also received a Silver Star. The Captain cautioned the men not to talk about "the incident" and warned that "anyone who talks will wind up in federal prison." When Swisher asked the Captain "exactly where we had been and what happened to the others," the Captain "left abruptly without answering."

After reviewing Swisher's application for PTSD benefits and the accompanying narrative, the VA denied the claim because Swisher failed to provide corroborating evidence

beyond his own statement that his PTSD was service connected.

Swisher appealed the denial and submitted a photocopy of a second DD-214, which included the typewritten comment that "[t]his document replaces the previously issued transfer document" and "[c]hanges and additions have been verified by Command." Section 16 of the second DD-214 stated that Swisher had received the Silver Star, Navy and Marine Corps Medal with Gold Star, Purple Heart, and Navy and Marine Corps Expeditionary Medal with Bronze "V." Section 17 stated that Swisher had received "[m]ultiple shrapnel and gunshot [wounds]—September 1955, Korea." The form was again signed by Captain W.J. Woodring. Swisher also submitted a letter signed by Captain Woodring, dated October 16, 1957, that confirmed Swisher's involvement in a "Top Secret" expeditionary mission, and verified his awards. Based on this information, the VA reversed its previous decision in July 2004, ruled that Swisher's PTSD was a compensable disability, and granted Swisher a total of $2,366 a month in benefits.[2]

---

[2] Swisher's claim that he was awarded a Purple Heart became a key issue in a criminal trial involving defendant David Hinkson, who was on trial for solicitation of murder. *See United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc). According to testimony at trial in 2004, Swisher told Hinkson "he was a veteran of the United States Marine Corps and a firearms expert who had killed a number of people in the Korean War." *Id.* at 1251–52. Apparently impressed by Swisher's war record, Hinkson asked him to torture and kill various individuals. Because Swisher wore a Purple Heart while testifying, the defense counsel attempted to impeach his credibility by producing military records showing that Swisher had not been awarded any medals. *Id.* at 1254. On re-cross, Swisher produced the replacement DD-214 described above. *Id.* The district court denied Hinkson's motion for a mistrial and instructed the jury to disregard the testimony about whether Swisher had a right to

About a year later, the VA received information from the military personnel division that the replacement DD-214 was fraudulent. In July 2006, after further investigation confirmed that the DD-214 was forged, the VA reversed its determination that the PTSD was service connected and required Swisher to pay back the PTSD benefits that he had received.

In July 2007, a grand jury indicted Swisher for four violations of federal law: (1) wearing unauthorized military medals in violation of 18 U.S.C. § 704(a); (2) making false statements to the VA regarding his military service, disabilities, and honors, in an effort to obtain benefits in violation of 18 U.S.C. § 1001(a)(2); (3) forging or altering his certificate of discharge, also in an effort to obtain benefits, in violation of 18 U.S.C. § 1001(a)(3); and (4) theft of government funds, in violation of 18 U.S.C. § 641.

During the one-week trial, Lieutenant Colonel Elaine Hensen, the assistant head for the Military Awards Branch at Headquarters Marine Corp, discussed her review of the Marine Corps files and her determination that the files contained no record of Swisher suffering any injuries in combat or receiving or being awarded the Purple Heart or any other medal or award. The government also introduced Exhibit 67, a photograph showing Swisher and another man

---

wear a Purple Heart. *Id.* at 1255. We ultimately upheld Hinkson's conviction. *Id.* at 1268. The parties agreed that any evidence related to the Hinkson trial would be excluded from Swisher's trial.

in Marine Corps League uniforms.[3]   In the photograph, Swisher is wearing several military medals and awards, and shaking hands with a person in civilian garb.  The parties stipulated that the photograph was authentic. Lt. Col. Henson testified that the photograph showed Swisher wearing the Silver Star, the Navy and Marine Corps Ribbon, Purple Heart, Navy and Marine Corps Commendation Medal with a Bronze V, and the UMC Expeditionary Medal.  She reiterated that there was nothing "in the United States Marine Corps' files . . . to substantiate Mr. Swisher's entitlement to wear any of those awards."  In addition, Jeffrey Shattuck, the head of the Records Correspondence Section for the Personnel Management Support Branch of the Marine Corps, outlined in detail the numerous indicia of fraud on Swisher's replacement DD-214 and accompanying letter from Captain Woodring that Swisher had used to verify his awards.

At the conclusion of the trial, the jury found Swisher guilty on all counts.  The court imposed a below-guidelines sentence of 12 months and one day, with a three-year term of supervised release.  This court affirmed Swisher's conviction and sentence on appeal.  *United States v. Swisher*, 360 Fed. App'x 784 (9th Cir. 2009).

Swisher subsequently challenged his conviction through a motion under 18 U.S.C. § 2255 and claimed that his conviction for wearing the medals violated the First Amendment under the reasoning of the Ninth Circuit's intervening decision in *United States v. Alvarez*, 617 F.3d 1198, 1200 (9th Cir. 2010).  The district court denied the

---

[3] The Marine Corps League is a congressionally chartered veterans organization that has its own Marine-related uniforms. *See* 36 U.S.C. §§ 140101–04.

motion. *See United States v. Swisher*, 790 F. Supp. 2d 1215, 1245–46 (D. Idaho 2011). This appeal followed. In the interim, the Supreme Court affirmed the Ninth Circuit's *Alvarez* decision. *See United States v. Alvarez*, 132 S. Ct. 2537 (2012).

II

We review de novo a district court's denial of relief to a federal prisoner under 28 U.S.C. § 2255. *United States v. Aguirre-Ganceda*, 592 F.3d 1043, 1045 (9th Cir. 2010). Section 2255 is a substitute for habeas corpus relief for federal prisoners, *see Davis v. United States*, 417 U.S. 333, 343–44 (1974), and allows a petitioner to file a motion to "vacate, set aside or correct" the petitioner's conviction or sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," 28 U.S.C. § 2255(a). In evaluating a § 2255 motion, we are not constrained by 28 U.S.C. § 2254(d), which precludes federal courts from granting habeas relief to a state prisoner with regard to any claim adjudicated on the merits unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Section 2255 does not have a similar restriction on review of claims by federal prisoners.

Although Swisher's challenge to his conviction is based on a Supreme Court decision decided after his conviction

became final, we are not barred from considering his claim. *Teague v. Lane*, 489 U.S. 288 (1989), generally precludes the application of "new constitutional rules of criminal procedure" to cases that "have become final before the new rules are announced." *Bousley v. United States*, 523 U.S. 614, 619–20 (1998) (internal quotation marks omitted). While *Teague* is applicable in the § 2255 context, *see United States v. Sanchez-Cervantes*, 282 F.3d 664, 667 (9th Cir. 2002), *Teague* does not bar the retroactive application of decisions holding "that a substantive federal criminal statute does not reach certain conduct," *Bousley*, 523 U.S. at 620 (internal quotation marks omitted), and *Alvarez* is a substantive decision of that sort. Nor does Swisher's failure to raise his constitutional claim at trial or on direct appeal prevent us from reviewing his claim. Although federal prisoners are generally barred from raising claims on collateral review that they could have raised on direct appeal, *see Bousley*, 523 U.S. at 621, the government can waive a procedural default defense by failing to raise it, *see United States v. Barron*, 172 F.3d 1153, 1156–57 (9th Cir. 1999) (en banc), and has done so here.

III

On appeal, Swisher contends that the Supreme Court's decision in *Alvarez*, which struck down § 704(b)'s prohibition on making false claims regarding medals as facially unconstitutional, applies equally to § 704(a)'s prohibition on the unauthorized wearing of medals, the provision under which Swisher was convicted.

A

We begin by considering the applicable legal framework. At the time of Swisher's relevant conduct, § 704 had two substantive prohibitions. Section 704(a), the provision under which Swisher was convicted, criminalized the unauthorized wearing of "any decoration or medal authorized by Congress for the armed forces of the United States . . . except when authorized under regulations made pursuant to law."[4] Section 704(b), added by the Stolen Valor Act of 2005, Pub. L. No. 109-437 § 3, 120 Stat. 3266, prohibited anyone from "falsely represent[ing] himself or herself, verbally or in writing, to have been awarded any decoration or medal authorized by Congress for the Armed Forces of the United States."

---

[4] At the time of Swisher's offense, the provision read:

> In general. —Whoever knowingly wears, purchases, attempts to purchase, solicits for purchase, mails, ships, imports, exports, produces blank certificates of receipt for, manufactures, sells, attempts to sell, advertises for sale, trades, barters, or exchanges for anything of value any decoration or medal authorized by Congress for the armed forces of the United States, or any of the service medals or badges awarded to the members of such forces, or the ribbon, button, or rosette of any such badge, decoration or medal, or any colorable imitation thereof, except when authorized under regulations made pursuant to law, shall be fined under this title or imprisoned not more than six months, or both.

18 U.S.C. § 704(a) (2008 ed.). Congress has since removed the word "wears" from the list of prohibited actions. *See* 18 U.S.C. § 704(a). That is, § 704(a) no longer prohibits the conduct for which Swisher was convicted.

In *Alvarez*, the defendant was convicted under § 704(b) for falsely claiming that he had received the Congressional Medal of Honor.    132 S. Ct. at 2542.    The defendant challenged his conviction on the ground that § 704(b) was a content-based suppression of pure speech and therefore facially unconstitutional under the First Amendment. *Id.* at 2543.  The Supreme Court agreed, and invalidated § 704(b) as facially violating the First Amendment, though no rationale commanded a majority.  A four-justice plurality agreed that false speech was generally entitled to protection under the First Amendment, *id.* at 2547, and held that § 704(b) was a content-based restriction subject to "the most exacting scrutiny," *id.* at 2547–48.  Applying this test, the plurality held that § 704(b) did not survive strict scrutiny because the government had not carried its burden of showing that there was a close fit between the restriction imposed and the injury to be prevented or that the government had chosen the least restrictive means available to achieve its ends. *Id.* at 2550–51.

Two other justices agreed with the result, but took a different analytical approach.  *See id.* at 2551 (Breyer, J., concurring).    These justices read the Stolen Valor Act narrowly, as criminalizing "only false factual statements made with knowledge of their falsity and with the intent that they be taken as true." *Id.* at 2552–53. Because "[s]uch false factual statements are less likely than are true factual statements to make a valuable contribution to the marketplace of ideas," the concurrence applied intermediate scrutiny. *Id.* at 2552.  The two justices would have held that § 704(b) failed to pass muster under intermediate scrutiny, because the government could achieve its objectives in less burdensome ways.  *Id.* at 2555–56.

While *Alvarez* did not mention § 704(a)'s prohibition on the wearing of medals without authorization, we subsequently addressed § 704(a)'s constitutionality in light of *Alvarez. See United States v. Perelman*, 695 F.3d 866 (9th Cir. 2012). In *Perelman*, the defendant claimed that a self-inflicted gunshot wound was actually a service-related shrapnel injury. *Id.* at 868. Based on this misrepresentation, the government awarded him a Purple Heart, and he received more than $180,000 in military benefits from the VA. *Id.* After the government discovered the fraud, it indicted the defendant for violating § 704(a) by wearing the Purple Heart without legal authorization. *Id.*

The defendant did not argue that he was entitled to First Amendment protection for his conduct in intentionally wearing a fraudulently obtained medal; rather, he argued that § 704(a) on its face was unconstitutionally overbroad because it criminalized innocent conduct that was inherently expressive and protected by the First Amendment. According to the defendant, § 704(a)'s broad prohibition on wearing military medals without authorization could sweep in the following individuals:

> Actors who have worn military medals (or colorable imitations) in films or other theatrical productions; schoolchildren who have worn medals given to them by soldiers; grieving spouses or parents who have worn medals at military funerals; grandchildren who have worn their grandparents' medals in Veterans Day parades; children and adults who have worn medals (or colorable imitations) to Halloween costume parties; others who may have worn medals as part of

other artistic expression, such as a hypothetical band called "The Purple Hearts"; others who have worn them simply as a fashion statement or because they like the way the medals look; a metal-worker who created a replica of a Silver Star in the privacy of his workshop, put it on, and then immediately melted it down; and a protestor who has dressed up like a Guantanamo prisoner and, to make a political statement, wore a friend's medal.

*Id.* at 870. The individuals in these situations share one common feature: they all wore the medals without having any intention of falsely communicating that they had been awarded the medals by government authorities. But Perelman argued that the statute nevertheless reached such conduct.

Agreeing that § 704(a) could "raise serious constitutional concerns" if read so broadly, "as a matter of pure statutory interpretation, constitutional avoidance, or both" *Perelman* interpreted § 704(a) as criminalizing "the unauthorized wearing of medals only when the wearer *intends to deceive*." *Id.* "By prohibiting the wearing of a colorable imitation and by including a scienter requirement, Congress made clear that deception was its targeted harm." *Id.* at 870–71. The word "deceive" means "to make (a person) believe what is not true." Webster's New World College Dictionary 374 (4th ed. 2005). Because § 704(a) requires the government to prove that the defendant attempted to make a third party believe something that was not true, the statute would not criminalize the conduct of "the grieving widow, the proud grandchild, the actor on stage, and the protestor" who wore a medal without

any such intent to deceive. *Id.* at 871. Section 704(a), then, applies only to individuals who wear medals for the purpose of falsely communicating they are entitled to wear them, as opposed to individuals who wear the medals to express grief, honor, or some other non-deceptive message. *Id.*

Having adopted this narrowing construction, *Perelman* rejected the argument that § 704(a) violated the First Amendment under the plurality's reasoning in *Alvarez*. It noted that while § 704(b) was a "content-based suppression of pure speech," § 704(a) was not. *Id.* (internal quotation marks omitted). First, § 704(a) regulated harmful conduct (deceptively wearing a medal), and "[e]ven if we assume that the intentionally deceptive wearing of a medal contains an expressive element—the false statement that 'I received a medal'—the distinction between pure speech and conduct that has an expressive element separates this case from *Alvarez*." *Id.* at 871. Second, *Perelman* concluded that § 704(a) was content-neutral because its goal of "preventing the intentionally deceptive wearing of medals" was unrelated to the suppression of a particular viewpoint. *Id.* at 872. Given these conclusions, *Perelman* determined that § 704(a) survived scrutiny under the test set forth in *United States v. O'Brien*, 391 U.S. 367 (1968), for content-neutral statutes that have the effect (but not purpose) of regulating some speech. *Id.* at 872–73. Accordingly, *Perelman* upheld the constitutionality of § 704(a).

B

We now turn to Swisher's claim that his conviction violated the Constitution. The nub of Swisher's argument is that his conduct in wearing the medals qualifies as expressive conduct, and therefore the application of § 704(a) to him

violated his First Amendment rights. To support the argument that he was engaged in expressive conduct, he states that "[b]y wearing said medals, Swisher was communicating that he had served in the military, performed acts in the military that were worthy of recognition and that he was in-fact recognized," and that "[t]he average person who viewed the medals on Swisher's clothing would understand that Swisher served in the military and performed acts worthy of commendation without further explanation."

We cannot pursue this line of reasoning, because it is foreclosed by *Perelman*. *Perelman* held that § 704(a) was not "a content-based suppression of pure speech," but rather criminalized "the harmful *conduct* of wearing a medal without authorization and with intent to deceive." *Id.* at 871. Swisher acknowledges that he knowingly wore medals in order to communicate to others that he was "worthy of commendation." Indeed, the authenticated photograph introduced at trial documented that Swisher wore several medals at a Marine Corps League function. There was no evidence that Swisher wore the medals innocently as an actor, grieving spouse or parent, or as part of a Halloween costume. *Cf. id.* at 870. Finally, the government presented extensive evidence that Swisher was not entitled to wear those medals, as no military record documented the awards or Swisher's claimed combat injuries. Taken together, this evidence demonstrates that Swisher wore the medals for the purpose of claiming that he was "worthy of commendation," when in fact he was not. Given *Perelman*'s conclusion that the First Amendment does not prevent Congress from criminalizing the act of wearing military medals without authorization and with an intent to deceive, Swisher's constitutional challenge to his conviction under § 704(a) fails.

Swisher raises two arguments against this conclusion.[5] First, Swisher argues that the government failed to present evidence that he wore the medals specifically in connection with his attempts to obtain benefits from the VA, and, as a result, there was inadequate evidence of intent to deceive. Swisher misreads *Perelman*.  Nothing in § 704(a) or *Perelman* requires the government to prove that the wearer wore the medals as part of a scheme to obtain money or benefits.

Second, Swisher argues that *Perelman* was wrongly decided.  According to Swisher, wearing a medal with the intent to deceive conveys a particular false message ("I am entitled to wear this medal").  Because § 704(b) is aimed at prohibiting this specific message, Swisher claims, it is not content-neutral, but rather a content-based prohibition of inherently expressive conduct.  In certain circumstances, the Supreme Court has recognized similar symbolic conduct as inherently expressive and therefore deserving of heightened First Amendment protection. *See Texas v. Johnson*, 491 U.S. 397, 404–06 (1989) (holding that burning the American flag was expressive conduct protected by the First Amendment); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (holding that wearing black armbands to protest

---

[5] Swisher notes in passing that because *Perelman* was decided after his conviction, the jury was not instructed that it needed to find an intent to deceive.  Swisher did not raise this argument at trial (indeed, he barely presses it on appeal), and we conclude that any error in omitting this new element from the jury instructions was harmless.  Given the overwhelming evidence that Swisher wore the medals with an intent to deceive, any error in the jury instructions did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Montalvo*, 331 F.3d 1052, 1057 (9th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

Vietnam War was "the type of symbolic act that is within the Free Speech Clause" and "was closely akin to 'pure speech' which, we have repeatedly held, is entitled to comprehensive protection under the First Amendment"). Under these precedents, Swisher argues, wearing a medal with intent to deceive is inherently expressive conduct entitled to heightened scrutiny, and therefore we are bound by *Alvarez*'s conclusion that a ban on such speech is unconstitutional.

Regardless of the strength of Swisher's arguments, we are not free to reconsider *Perelman* or depart from its reasoning. We may overrule a prior decision by a three-judge panel only when there is intervening higher authority that is clearly irreconcilable with the prior decision. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). Absent such a decision by an en banc panel or a Supreme Court decision, *see, e.g.*, *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001), a change in regulatory interpretation, *see Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 1002–03 (2005), or a change in state supreme court interpretation of that state's law, *see Sandstrom v. Montana*, 442 U.S. 510, 516–17 (1979), "a later three-judge panel . . . has no choice but to apply the earlier-adopted rule." *Hart*, 266 F.3d at 1171. Here, there is no such intervening authority, and *Perelman* compels us to reject Swisher's challenge to § 704(a).[6]

Because § 704(a) can be constitutionally applied to Swisher's conduct, there was no "violation of the

---

[6] The concurrence acknowledges that despite its view that *Perelman* was wrongly decided, "as a three-judge panel, we are bound by *Perelman*."

Constitution or laws of the United States," 28 U.S.C.
§ 2255(a), presented by Swisher's collateral attack under
§ 2255.

**AFFIRMED**.

TASHIMA, Circuit Judge, concurring in the judgment:

I concur in the result reached by the majority, but only
under the compulsion of *United States v. Perelman*, 695 F.3d
866 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 2382 (2013).
While the majority faithfully applies *Perelman*, *Perelman*
itself ignores the teaching of *United States v. Alvarez*, 132 S.
Ct. 2537 (2012), and sanctions the punishment of pure
speech, solely because that speech is a falsehood. Because I
cannot agree with *Perelman*'s reasoning, I concur only in the
judgment.

Elven Swisher wore military medals without authority to
a Marine Corps League event and was convicted of violating
18 U.S.C. § 704(a). The record contains only one photograph
of that event. No evidence suggests that Swisher wore the
medals in any other context, and no evidence connects
Swisher's wearing of the medals to his scheme wrongfully to
obtain benefits from the Department of Veterans Affairs or its
predecessor the Veterans Administration, or any other
fraudulent scheme. Swisher was convicted because he told a
lie. I do not believe that § 704(a) should be read to punish
such pure speech.

*Perelman* was a facial First Amendment challenge to
§ 704(a). The panel held that implying an intent to deceive

as an element of the crime cured any First Amendment problem. 695 F.3d at 871 ("Accordingly, we hold that a person violates the unauthorized wearing portion of 18 U.S.C. § 704(a) only if he or she has an intent to deceive."). As construed by the majority, *Perelman*'s "intent to deceive" is nothing more than the intent to tell a lie. *See* Maj. Op. at 14 (adopting dictionary definition of "deceive" as meaning "to make (a person) believe what is not true"); *id.* at 15 (§ 704(a) "applies only to individuals who wear the medal for the purpose of falsely communicating they are entitled to wear them"). This is hardly a "narrowing construction" of the statute. *Id*. at 15 Adding intent to deceive as an element adds nothing to "intent to wear the medal." It has no narrowing or limiting force. *Perelman* and the majority's interpretation of *Perelman* turn § 704(a) into a statute that criminalizes false speech *per se.*

But we have observed that criminalizing pure speech is contrary to the First Amendment. *See United States v. Alvarez*, 671 F.3d 1198, 1213 (9th Cir. 2010) ("We are aware of no authority holding that the government may, through a criminal law, prohibit speech *simply* because it is knowingly factually false."), *aff'd*, 132 S. Ct. 2537 (2012). We further observed in *Alvarez* that:

> we presumptively protect *all* speech against government interference, leaving it to the government to demonstrate, either through a well-crafted statute or case-specific application, the historical basis for a compelling need to remove some speech from

> protection . . . for some reason other than the mere fact that it is a lie [].

*Id.* at 1205.

More importantly *Perelman* and the majority's application of it in this as-applied challenge, are contrary to the Supreme Court's teaching in *Alvarez*. As the majority reads *Perelman*, it allows a general "threat of liability or criminal punishment to roam at large, discouraging or forbidding the telling of [a] lie in contexts where harm is unlikely or the need for [a] prohibition small." *Alvarez*, 132 S. Ct. at 2555 (Breyer, J., concurring in the judgment). It simply sweeps too broadly in terms of the First Amendment. It ignores that "cases that condone the criminalization of false speech involve some sort of 'legally cognizable harm associated with [the] false statement.'" *United States v. Keyser*, 704 F.3d 631, 640 (9th Cir. 2012). It fails to understand § 704(a) "with the commands of the First Amendment clearly in mind." *United States v. Bagdasarian*, 652 F.3d 1113, 1116 (9th Cir 2011) (quoting *Watts v. United States*, 394 U.S. 705, 707 (1969) (per curiam) (internal quotation marks omitted)). It construes § 704(a) as a statute that criminalizes false speech *per se*.

I quote just a few passages from *Alvarez* to illustrate just how far from the teaching of *Alvarez* both *Perelman* and the majority's application of it have strayed:

- Absent from those few categories where the law allows content-based regulations of speech is any general exception to the First Amendment for false

statement. *Alvarez*, 132 S. Ct. at 2544 (Kennedy, J., plurality opinion).**[1]**

- The court has never endorsed the categorical rule the Government advances: that false statements receive no First Amendment protection. *Id.* at 2545.

- [O]ur law and tradition . . . reject[] the notion that false speech should be in a general category that is presumptively unprotected. *Id.* at 2546–47.

- The Government has not demonstrated that false statements generally should constitute a new category of unprotected speech on this basis. *Id.* at 2547.

- Were the Court to hold that the interest in truthful discourse alone is sufficient to sustain a ban on speech, absent any evidence that the speech was used to gain a material advantage, it would give government a broad censorial power unprecedented in the Court's cases or in our constitutional tradition. The mere potential for the exercise of that power casts a chill, a chill the First Amendment cannot permit if free speech, thought, and discourse are to remain a foundation of our freedom. *Id* at 2547–48.

- [T]he [Stolen Valor] Act conflicts with free speech principles. *Id* at 2548.

Finally, *Perelman*'s limiting effort – the addition of "intent to deceive" as an element of § 704(a) – was not even

---

**[1]** The bullet-point quotations that follow are also from the plurality opinion.

necessary and is incomplete. *Perelman* holds that "[b]ecause the statute requires an intent to deceive, the examples listed above do not fall within the scope of the statute." 695 F.3d at 871. But no one ever contended that the Stolen Valor Act reached such examples – movies, theatrical productions, school children, Halloween costumes, and parades. *See id.* at 870 (listing examples). In fact, the *Alvarez* plurality assumed "that [the Stolen Valor Act] would not apply to, say, a theatrical performance." 132 S. Ct. at 2547 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). More troubling, however, is that *Perelman* fails to address the very evil addressed by Justice Breyer's concurrence in *Alvarez:*

> [F]ew statutes, if any simply prohibit without limitation the telling of a lie, even a lie about one particular matter. Instead, in virtually all these instances limitations of context, requirements of proof of injury, and the like, narrow the statute to a subset of lies where specific harm is more likely to occur. The limitations help to make certain that the statute does not allow its threats of liability or criminal punishment to roam at large, discouraging or forbidding the telling of the lie in contexts where harm is unlikely or the need for the prohibition is small.
>
> The statute before us [*i.e.*, the Stolen Valor Act] lacks any such limiting features. It may be construed to prohibit only knowing and intentional acts of deception about readily verifiable facts within the personal knowledge of the speaker, thus reducing the risk that valuable speech is chilled. *But it still ranges*

> *very broadly.* And that breadth means that it
> creates a significant risk of First Amendment
> harm. As wrtten, it applies in family, social,
> or other private contexts, where lies will often
> cause little harm. It also applies in political
> contexts, where although such lies are more
> likely to cause harm, the risk of censorious
> selectivity by prosecutors is also high. . . .
> And so the prohibition may be applied where
> it should not be applied, for example to bar
> stool braggadocio or, in the political arena,
> subtly but selectively to speakers that the
> Government does not like. These
> considerations lead me to believe that the
> statute as written risks significant First
> Amendment harm.

*Id.* at 2555 (Breyer, J., concurring in the judgment) (emphasis added).

Even accepting *Perelman* on its own terms that, unlike § 704(b)'s content-based restriction on speech, § 704(a) is aimed at suppressing conduct, the majority recognizes the inherent tension between *Perelman* and Supreme Court precedent, noting that "[i]n certain circumstances, the Supreme Court has recognized similar symbolic conduct as inherently expressive and therefore deserving of heightened First Amendment protection." Maj. Op. at 17 (citing *Texas v. Johnson*, 491 U.S. 397, 404–06 (1989) (holding that burning the American flag was expressive conduct protected by the First Amendment); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 313 U.S. 503,506 (1969) (holding that wearing black armbands to protest Vietnam War was "the type of symbolic act that is within the Free Speech Clause" and "was

clearly akin to 'pure speech' which, [the Court has] repeatedly held, is entitled to comprehensive protection under the First Amendment")).  No conduct can be more "inherently expressive and therefore deserving of heightened First Amendment protection" than the wearing of a military medal at a Marine Corps League event.

As the foregoing discussion demonstrates, there is, at the least, substantial doubt as to whether *Perelman* was correctly decided.  I recognize, however, that, as a three-judge panel, we are bound by *Perelman.  See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001).  I therefore reluctantly concur in the judgment.